No. 47,702

State of Kansas, *Appellee*, v. Benjamin Matthews, *Appellant*.

(538 P. 2d 637)

Opinion filed July 17, 1975.

*Russ B. Anderson,* of Emporia, argued the cause and was on the brief for the appellant.

*Michael G. Patton,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: Defendant-appellant (Benjamin Matthews) was charged and convicted of possession of marijuana, as defined by K. S. A. 1974 Supp. 65-4127b, and unlawful possession of a firearm, as defined by K. S. A. 21-4204. The defendant appeals only from his conviction on the firearm charge, thus the conviction for possession of marijuana is not involved in this appeal.

The sole issue on appeal arises from the admission into evidence of two letters written by defendant while he was incarcerated in jail awaiting trial. The letters were submitted by the state as evidence tending to prove the firearm charge. Both letters were addressed to a girl friend of defendant.

The first of the two letters (identified as Exhibit 9) was seized by Merlin E. Hayes, Chief of Police of Emporia. Chief Hayes's

testimony concerning his seizure of the first letter is narrated in the record as follows:

". . . I came into possession of the letter on March 20, 1974. I was in my office. My attention was directed to a Negro person who was standing in front of the police station talking to a prisoner or someone in the jail. I observed something come out of the upstairs jail window. It struck the window of my office and fell to the ground. I immediately went from my office outside and found a sealed envelope lying on the ground beside the building. Exhibit 9 is the envelope that I found. The envelope is addressed to Miss Patricia Long, 1014 Waverly, Kansas City, Kansas. In the upper left-hand corner it has the name of Mr. Ben Matthews."

Chief Hayes further testified that Matthews was incarcerated in the City-County (Emporia, Lyon County) jail and that after he obtained the letter he read the contents.

Interception of the second letter is described by William D. Lewis, a witness for the state, whose testimony is narrated in pertinent part as follows:

". . . I am assistant to the commander in charge of the prisoner service of the Emporia Police Department. I am responsible for the jail and cost accounting, the operating of the jail, records, etc. I have been in this position since 1970. I was so employed on March 22, 1974. I can identify Exhibit No. 10 for the reason that I remember this letter being given to me by a prisoner to post; and prior to posting it in the mail, it is the policy of the jail to examine the letter. The man who gave me the letter is Benjamin Matthews. He gave it to me on March 22 shortly after lunch. Ben gave me the letter personally. It was in an envelope, however, the envelope was not sealed. There was no stamp on it. I examined the contents and took it to Officer Armitage in the Detective Division. I did examine the letter. Exhibit 10 is a copy of the letter received from Mr. Matthews."

Chief Hayes further testified that there were no written instructions for management of the jail, but that it was the practice to read or censor all mail coming out of the jail; that prisoners were made aware of the practice when they were booked in; that the information was on the booking sheet; and that, in addition, the prisoners were told verbally of the practice. The chief testified that after letters were intercepted and censored they are sent on to the addressees.

The record does not show that any matter is actually excised from a letter before it is posted. We gather from the testimony, although the matter is not clear, that outgoing mail is merely read for information purposes, and then mailed, as written, to the addressee.

The record indicates that the second letter was mailed to the

addressee after it was delivered to Lewis by defendant. A copy was made which was introduced into evidence.

Defendant objected to the admission of the letters at trial, but the grounds of his objection and the arguments made to the trial court are not reproduced in the record. After hearing arguments, out of the jury's presence, the trial court admitted the letters into evidence.

The incriminating statements in both letters are essentially the same. The first letter, dated March 20, 1974, reads in pertinent part:

"What's happening in your world, my world is empty without you. Well, baby to make a long story short, right now I'm writing you from a jail cell, the reason for all this is, that I'm being charged with possession of a firearm 5 year's prior to a felony, for having a pistol, and for possession of marijuana, in which I didn't have nothing but a joint or two and a pistol which they don't have, the only reason I'm being charged is because I shot the dude accidentally, he ain't pressing any charges it's just this dam state who's trying to get me locked back up and from the look's of things seems like they are going to do it. . . ."

In the second letter, dated March 22, 1974, defendant indicates that he was aware that the first letter had been intercepted. The second letter reads in part:

". . . Well, to make a long story short, I am now locked up in the Lyon County Jail for shooting this dude, so they say and for possession of marijuana in which I didn't have nothing but about a joint or two, you know. Like this dude ain't pressing any charges it's just this dam state, yea now I wish that I never came down to this place now, just as sure as I get out of this trouble I'm coming back to Kansas City, to stay. Like for one thing there's to many snitches around this town. For instance like I had heard that this dude was a snitch and I told this white dude that was walking down the street to go tell this dude to come over to the window where I was in this jail house, sure thing he got out of the car and came over and this letter that I was writing you I told him to mail, so he said 'ok,' I dropped it down and he went and told the 'man'. . . ."

On appeal defendant claims error in the admission of the letters into evidence on three grounds: (1) They were the fruits of an unreasonable search and seizure; (2) their use violated his Fifth Amendment guarantees against compulsory self-incrimination; and (3) the reading of his outgoing mail violated First Amendment rights of free speech.

Defendant's arguments indicate that he would have the court consider both letters in the same context with respect to invasion of his constitutional rights. The manner in which the two letters

came into the possession of the police puts them into separate and distinct categories. The first letter, seen dropping from the jail window, was not discovered incidental to a search nor was it read during the process of mailing. The very nature of the letter dropping incident would and should invite the suspicion of any efficient police officer or jailer when such an occurrence is observed. Checking unusual occurrences, such as items being thrown from the jail, clearly falls within the duty of Chief Hayes. The letter, when picked up by Hayes, was in plain view on public property. No search was involved. There is no basis whatsoever for defendant's claim of unlawful search and seizure with respect to the first letter. Mere observation does not constitute a search. (*United States v. Lee*, 274 U. S. 559, 71 L. Ed. 1202, 47 S. Ct. 746; and *Haerr v. United States*, 240 F. 2d 533 [5th Cir. 1957] ). The rule announced in the foregoing cases was adopted in this jurisdiction in our decision in *State v. Yates*, 202 Kan. 406, 449 P. 2d 575, cert. dismissed 396 U. S. 996, 24 L. Ed. 2d 461, 90 S. Ct. 496, wherein we held:

"An 'unreasonable search,' as that term is used in the Fourth Amendment to the Constitution of the United States and Section 15 of the Bill of Rights in the Kansas Constitution, implies an exploratory investigation and mere observation of what may be readily seen does not constitute a search." (Syl. ¶ 1.)

The incriminating statements made by defendant in the first letter were voluntarily made. No claim is made that Chief Hayes came into possession of the letter by use of deceit or trickery. We know of no reason why the state was not entitled to use such statements in its case.

While circumstances surrounding the state's acquisition of the statements continued in the second letter differ from the situation concerning the first, we, likewise, find the defendant's arguments fail to warrant a reversal. The second letter was delivered to the jailer unsealed and unstamped—a circumstance which we believe corroborates the state's assertion that defendant knew his outgoing mail would be read. There is no evidence that defendant did not know of this procedure. Here, again, as in the case of the first letter, no search was involved. While a copy was made of the letter, it was stamped and mailed without any deletions to the addressee. Thus, it cannot be said that defendant's rights of communication were infringed, limited or restricted. Since the letter was delivered to the jailer unsealed and with knowledge that it would be read,

defendant has no claim of any invasion of privacy. There is no evidence of trickery or deceitful practices. Defendant voluntarily wrote the letter knowing it would be read. Under such circumstances it cannot be said that the state gained access to the contents of the letter by search and seizure.

Cases dealing with the use of prisoner's censored mail as evidence are collected in an annotation in 52 A. L. R. 3d, commencing at page 548. The author of the annotation in § 5 makes this statement:

"In considering the propriety of the censorship and evidentiary use of an unconvicted prisoner's mail, courts generally have attached no significance to the fact that the prisoner was unconvicted, but rather have decided such cases according to their views as to the propriety of prison mail censorship generally, without any discussion of the question whether different principles might be appropriate to cases involving unconvicted prisoners." (p. 559.)

In *State v. Johnson*, (Mo.), 476 S. W. 2d 516, the Supreme Court of Missouri was confronted with contentions almost identical with those made here relating to the admission into evidence of the contents of a letter written by a defendant confined in jail awaiting trial. Concerning a contention of unconstitutional search and seizure the Missouri court said the point was not well-taken "because he composed and released the letter knowing it would be read by the jailer prior to mailing." As to the claim that admission of the letter violated defendant's privilege against self-incrimination the court quoted from the decision in defendant's prior appeal. (*State v. Johnson*, [Mo.], 456 S. W. 2d 1.):

". . . 'Defendant's admissions [in the letter] were discovered in the course of jail security. There is no indication this was merely a guise to get a look at defendant's correspondence. Defendant was under no compulsion or interrogation to admit guilt or make statements inferring guilt.' . . ." (p. 519.)

In *Hicks v. State*, (Tenn.), 480 S. W. 2d 357, a letter written to his girl friend by a jail inmate, awaiting trial, was intercepted by the jailer as in the case at bar. The letter contained incriminating statements and was submitted in evidence by the state. Defendant was convicted and on appeal presented to the Court of Criminal Appeals of Tennessee essentially the same arguments as those made by defendant herein. The Tennessee court observed that defendant voluntarily wrote a letter and that no coercion or deceit was involved in the acquisition of it by the state. The court cited *Stroud v. United States*, 251 U. S. 15, 64 L. Ed. 103, 40 S. Ct. 50, as being directly in point.

In *Denson v. United States,* 424 F. 2d 329 (10th Cir. 1970) messages between defendant and other inmates confined in a federal penitentiary were intercepted and photographed. Defendant was awaiting trial for fatally stabbing another inmate at the time. The intercepted messages contained incriminating statements which were introduced by the prosecution at trial. Defendant claimed the admission of messages violated his Fifth Amendment privilege against self-incrimination and were obtained through an unlawful search and seizure. Both contentions were rejected. As to the first claim the court observed that there was no confession or admission extracted from defendant through an unlawful interrogation or coercion as in *Escobedo v. Illinois,* 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758, and that defendant was merely permitted to do that which he set out to do. The court went on to say that under the facts there was no search or seizure since defendant voluntarily delivered the messages to the inmate-orderlies who voluntarily delivered them to the correctional officers.

In the case at bar defendant voluntarily wrote the statements in question in the letter which he voluntarily delivered to the jailer.

Defendant relies largely upon *Procunier v. Martinez,* 416 U. S. 396, 40 L. Ed. 2d 224, 94 S. Ct. 1800. *Procunier* was a class action brought by inmates of California Penal Institutions against the Director of the California Department of Corrections challenging rules relating to censorship of prisoner mail and other regulations promulgated by the department. There was no evidentiary question involved. The main thrust of the decision was that the rules pertaining to mail censorship "fairly invited prison officials and employees to apply their own personal prejudices and opinions as standards for prisoner mail censorship." The opinion went on to give examples as to what would constitute justifiable censorship of prisoner mail. The decision went only to censorship, it did not proscribe the reading of prisoner mail. Since censorship was held to be justifiable under certain circumstances then, by implication, it appears that the mere reading of prisoner's mail is permissible. We are not concerned with questions that arise where a prisoner's correspondence with his attorney is read. (See *Cox v. State,* 197 Kan. 395, 416 P. 2d 741; and *State v. Carr,* 206 Kan. 341, 479 P. 2d 816.)

Likewise, other cases cited by defendant do not involve the evidentiary question presented herein. *Palmigiano v. Travisono,* 317 F. Supp. 776, (1970), was a class action against state (Rhode

Island) officials brought by inmates challenging certain state statutes, regulations and customs relating to the treatment of prisoners. In *Preston v. Cowan*, 369 F. Supp 14, (1973), a state prisoner sued the Superintendent of the Kentucky State Penitentiary for damages for violation of his civil rights. In *Morales v. Schmidt*, 340 F. Supp. 544, (1972), the court held that the right of an inmate to engage in correspondence of a romantic nature with his sister-in-law was protected by the First Amendment to the Constitution of the United States. There is language appearing in the cases mentioned which condemns the unrestricted censorship of a prisoner's mail and in *Palmigiano* a temporary restraining order was issued. The cases cited by defendant deal with direct challenges to prison regulations concerning censorship and other prison regulations by way of petitions for injunctive or declaratory judgment relief against such regulations. They do not deal with the propriety of rulings admitting incriminating written statements which were voluntarily given.

In the instant case, neither letter was obtained by the state as a result of a search. The incriminating statements in each letter were voluntarily made. There is no evidence of coercion, trickery or deceit on the part of any police officer. There is evidence that the second letter was mailed to the addressee. As to the first letter, the record is not clear, but we assume that it was not mailed to the addressee. However, since the first letter was merely thrown out a jail window, rather than delivered to a jailer, we find no basis for defendant's claim of infringement of his First Amendment rights in this regard.

The judgment is affirmed.

FROMME, J., not participating.