[Crim. No. 18872. First Dist., Div. Four. Dec. 3, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER JAMES GARVEY, Defendant and Appellant.

---

---

## Counsel

Alan M. Caplan, under appointment by the Court of Appeal, Bushnell, Caplan & Fielding for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson and R. Gordon Baker, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

---

## Opinion

**CHRISTIAN, J.**—Peter James Garvey appeals from a judgment of imprisonment which was rendered after a jury found him guilty of assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)).

After spending some hours drinking in a bar, appellant attacked without warning another patron who was making ready to leave. The victim fell to the floor and appellant kicked him in the head. Other patrons subdued appellant and the bartender ordered him to leave. On his way out appellant passed the victim, who was still on the floor, and again kicked him in the head. The victim suffered serious injuries.

While appellant was in jail awaiting trial, appellant wrote to a friend. The letter, which was proved at trial through the introduction of a copy, contained a narrative of the events of trial: "[I] just walked up to this guy and nutted up on him, must have caught him by surprise as light as I am, anyhow, I started kicking him in the head, then quit and went out of the front door and the man was on us. Charged with A.D.W. The weapon is my shoe."

Before trial, appellant moved to suppress the letter on the theory that its interception was a violation of "First and Fourth Amendment rights." The court reserved its ruling and during the trial took evidence

out of the hearing of the jury concerning the events which brought the letter into the possession of the prosecutor. The motion to suppress evidence was denied.

Defense counsel then objected to evidence based on a copy of the letter (the original having been sent on to the addressee) under the best evidence rule. Upon a showing that the addressee of the letter denied receiving it and stated "that even if I had, I sure wouldn't turn it over to you." The court ruled the copy admissible under exceptions to the best evidence rule (Evid. Code, §§ 1501, 1502).[1]

■ Appellant contends, relying on *Procunier* v. *Martinez* (1974) 416 U.S. 396 [40 L.Ed.2d 224, 94 S.Ct. 1800], and related cases, that the letter should have been suppressed on the ground that it was obtained for the prosecution as the result of an unconstitutional program of mail censorship. This contention cannot be sustained. The letter was copied as authorized by section 1151 of the Humboldt County Administrative Code, pursuant to a program of monitoring all incoming and outgoing prisoner mail. The purpose of the monitoring operation is to protect jail security. This program is consistent with the holding of the United States Supreme Court in *Procunier* v. *Martinez, supra,* (see 416 U.S. at p. 413 [40 L.Ed.2d at p. 240]).

The jailer monitoring outgoing mail copied appellant's letter because it contained an offer to provide the addressee, who was then incarcerated in Contra Costa County, with a pistol. The jailer did not censor the letter; after taking copies which ultimately reached the prosecutor and defense counsel, he posted the letter to the addressee. These actions by the jailer did not constitute a violation of First Amendment rights.

■ Appellant's claim of the Fourth Amendment violation is also without merit. Except where the communication is a confidential one addressed to an attorney, court or public official, a prisoner has no expectation of privacy with respect to letters posted by him. (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 152 [132 Cal.Rptr. 265], cert. den. 430 U.S. 986 [52 L.Ed.2d 382, 97 S.Ct. 1686].)

---

[1]Evidence Code section 1501: "A copy of a writing is not made inadmissible by the best evidence rule if the writing is lost or has been destroyed without fraudulent intent on the part of the proponent of the evidence."

Evidence Code section 1502: "A copy of a writing is not made inadmissible by the best evidence rule if the writing was not reasonably procurable by the proponent by use of the court's process or by other available means."

■ Appellant contends that use of a copy of the letter, in lieu of the original, should have been precluded under the best evidence rule (Evid. Code, § 1500). But there was proof that the addressee had received the letter in the Contra Costa County jail. His cell was then searched pursuant to a warrant and the letter was not found. This evidence adequately established the unavailability of the document.

■ Appellant contends that it was improper for the court to allow proof of part of the contents of the letter after the defense had rested its case. The court admitted the evidence at that late stage of the trial on the dual ruling that the material was proper rebuttal evidence and that in the exercise of discretion the prosecution's case in chief should be reopened. The first theory of admission was doubtful at best as the trial court recognized. We do not reach the question because the second alternative basis of the court's ruling must be sustained as an exercise of discretion under Penal Code section 1094.[2] The evidence was highly pertinent and it was offered as soon as the necessary foundational showing could be made. Appellant had full opportunity to respond to the material taken from the letter. There was no abuse of discretion. (Cf. *People* v. *Demond* (1976) 59 Cal.App.3d 574 [130 Cal.Rptr. 590].)

Finally appellant contends that in pronouncing judgment the court should not have considered factors personal to appellant, as authorized by rule 421(b), California Rules of Court. This contention must be rejected as contrary to governing authority. (See *People* v. *Cheatham* (1979) 23 Cal.3d 829 [153 Cal.Rptr. 585, 591 P.2d 1237].

The judgment is affirmed.

Caldecott, P. J., concurred.

**POCHÉ, J.**—I dissent.

The majority here concludes that the program of mail censorship at the Humboldt County jail does not violate the Fourth and First Amendment rights of pretrial detainees; I disagree.

Appellant was incarcerated in the Humboldt County jail because of his inability to post bail. While awaiting trial he wrote a letter to a

---

[2]Penal Code section 1094: "When the state of the pleadings requires it, or in any other case, for good reasons, and in the sound discretion of the Court, the order prescribed in the last section may be departed from."

friend who was then in jail at Martinez, California. Appellant was not informed that his letter would be subject to censorship nor were the regulations allowing censorship posted in the facility.

What appellant did not know was that the jail personnel routinely censored all incoming and outgoing mail except correspondence with courts, lawyers, holders of public office or the State Department of Corrections. Appellant's letter was censored by Deputy McLellan who testified that: "In censoring the mail I open letters and glance through them, looking for filthy language, anything that might catch my eye as far as jail security goes. Just glance through them, don't read every letter unless something catches my eye, and then I read the letter, and if I think appropriate, send a copy to whoever may be involved." The officer noticed a mention of a weapon, made a copy of the letter which he gave to his supervisor, and then sent the original to the addressee. Neither the appellant nor his correspondent were informed of Officer McLellan's actions.

At trial, the prosecution was allowed to introduce the copy of appellant's letter, but the portion which pertained to the weapon was excised.

### Fourth Amendment Violation

Under California law, one appropriate test for determining the validity of a particular search and seizure made without the prior issuance of a warrant is whether the defendant exhibited a reasonable expectation of privacy, and if so, whether that expectation was violated by an unreasonable governmental intrusion. (*North* v. *Superior Court* (1972) 8 Cal.3d 301, 308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) The foregoing principle was adopted by the California Supreme Court from the language of *Katz* v. *United States* (1967) 389 U.S. 347, [19 L.Ed.2d 576, 88 S.Ct. 507], wherein the United States Supreme Court held that the government's activities in electronically listening to and recording the conversation of the petitioner in a public phone booth violated the privacy upon which he justifiably relied. The court concluded that the government's activities constituted a search and seizure within the meaning of the Fourth Amendment and that in the absence of a prior judicial approval the search and seizure were unreasonable. (*Id.*, at p. 353 [19 L.Ed.2d at p. 583].)

Our task—mandated by those decisions—is to determine (1) whether a pretrial detainee who has no notice that his sealed personal mail will be subject to censorship by jail authorities has a reasonable expectation that such correspondence will remain private, and, if so, (2) whether the government's acts of opening of the letter and copying it without notice to him are unreasonable governmental intrusions.

Rather than take this approach, the majority relies on *People v. Manson* (1976) 61 Cal.App.3d 102, 152 [132 Cal.Rptr. 265] (cert. den. 430 U.S. 986 [52 L.Ed.2d 382, 97 S.Ct. 1686]), for the proposition that "[e]xcept where the communication is a confidential one addressed to an attorney, court or public official, a prisoner has no expectation of privacy with respect to letters posted by him." The source of the *Manson* headnote[1] is the 1919 decision of the United States Supreme Court in *Stroud v. United States*, 251 U.S. 15 [64 L.Ed. 103, 40 S.Ct. 50] (reh. den. 251 U.S. 380 [64 L.Ed. 317, 40 S.Ct. 176]), where it was held that the interception and use in evidence of certain letters tending to establish the guilt of a convicted federal prisoner charged with the murder of a prison guard did not violate the Fourth Amendment because the letters were "voluntarily written," "no threat or coercion was used to obtain them," and they came into possession of the prison officials under "established practice" designed to promote discipline of the institution. (*Id.*, at p. 21 [64 L.Ed. at p. 111].) *Stroud* was decided 48 years before *Katz,* which recognized that the Fourth Amendment also protects a reasonable expectation of privacy. While *Stroud* has not been expressly overruled by the Supreme Court, its continued validity has been questioned. For example, Professor LaFave in his treatise on the Fourth Amendment, Search and Seizure (1978) (§ 10.9c, pp. 409-410), notes that *Stroud* arose in an era when it was generally accepted that prisoners had no constitutional rights, whereas it is now clear not only that prisoners are entitled to the protections of the Fourth Amendment, but that the scope of its protection has been significantly extended in the many years since *Stroud* was decided. "In particular," LaFave emphasizes, "it is no longer essential to establish that there has been an invasion of a constitutionally protected area; under Katz v. United States, the focus is upon whether the authorities violated a justified expectation of privacy." (*Id.*, at p. 409.)

Thus, in my view we are required to examine the scope of the Fourth Amendment's protection of a pretrial detainee. Simply asserting that "a

[1]The above-mentioned quote in *Manson, supra,* at page 152, is from *People v. Dinkins* (1966) 242 Cal.App.2d 892, 902-903 [52 Cal.Rptr. 134], which in turn cites *Stroud.*

prisoner has no expectation of privacy with respect to letters posted by him" is not the type of analysis I think the Supreme Court had in mind. Such an approach in addition to ignoring the development of constitutional law since the Bird Man of Alcatraz murdered his prison guard is similarly anachronistic in failing to discuss changes in the California Constitution, especially the establishment of the right to privacy. (Cal. Const., art. I, § 1.) While the extent to which incarceration limits that right has not been definitively addressed by our courts, the Legislature has acted to guard it. Penal Code section 2600 protects *convicted* felons from unnecessary deprivation of their constitutional rights, including, of course, the right to privacy: "A person sentenced to imprisonment in a state prison, may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public." In construing this statute, the California Supreme Court emphasized that "...we have long since abandoned the medieval concept of strict 'civil death' and have replaced it with statutory provisions seeking to insure that the civil rights of those convicted of crime be limited only in accordance with legit:mate penal objectives." (*In re Harrell* (1970) 2 Cal.3d 675, 702 [87 Cal.Rptr. 504, 470 P.2d 640].) If the Legislature has provided for protection of the right of privacy of convicted prisoners, subject only to reasonable restrictions necessary for the security of the prison, a pretrial detainee is entitled to no less protection. To pretend otherwise is to pretend that *Katz,* Penal Code section 2600 and California Constitution, article I, section 1, do not exist.

There is absolutely no evidence that the appellant—or anyone else—was put on notice by Humboldt County jail officials that sealed correspondence would be subjected to censorship. There is no dispute: regulations as to prisoner mail censorship had not been posted in the jail for at least six months. Certainly, the appellant as a pretrial detainee, with no notice of the practices of the jail personnel toward inmate correspondence, had a justifiable expectation that his sealed personal mail would remain private.

The next question in accordance with *North* and *Katz, supra,* analysis is whether the opening of the mail without prior notice is an unreasonable governmental intrusion.

Lack of notice that the defendant would be subjected to random body cavity searches was the ground upon which the court in *United States* v.

*Lilly* (5th Cir. 1978) 576 F.2d 1240, held that the search of an inmate at a federal correctional institution was in violation of the Fourth Amendment. The court observed that body cavity searches were not unreasonable per se, and that although the government had shown its legitimate need for such searches on inmates who returned to the institution after an unsupervised work absence, the search of the defendant was "unreasonable because she was given no notice that her voluntary absences from the prison potentially would subject her to completely random body cavity searches." (*Id.*, at p. 1246.) By a parity of reasoning the search of the appellant's letter in the instant case was unreasonable because he was given no notice that his correspondence would be subjected to random censorship, and that a copy of his letter would be made "if the officer felt it was 'appropriate.'"

Although other courts have reached contrary conclusions on the Fourth Amendment rights of prisoners, these decisions have generally relied upon the antiquated *Stroud* decision. (See, e.g., *Smith* v. *Shimp* (7th Cir. 1977) 562 F.2d 423; *Hayes* v. *United States* (10th Cir. 1966) 367 F.2d 216; see also, Annot., 52 A.L.R.3d 548.) Furthermore, the majority of those cases involved, at the very least, advance notice to the defendant that his mail would be subject to censorship. (See, e.g., *State* v. *Matthews* (1975) 217 Kan. 654 [538 P.2d 637] [defendant was notified at the time of booking]; *Rennert* v. *State* (1975) 263 Ind. 274 [329 N.E.2d 595] [defendant was provided with stationary with a warning printed on it]; *United States* v. *Wilson* (9th Cir. 1971) 447 F.2d 1 [it appeared from the meticulous avoidance of detail in the defendant's letter that he was aware that his mail would be screened].) The lack of advance notice in this case takes us out of the realm of such cases and into the area of a justifiable expectation of privacy and an unreasonable governmental intrusion. I would therefore hold that the opening of appellant's letter and the making of the copy without notice to the appellant constituted an unreasonable search and seizure within the meaning of the Fourth Amendment and that the copy of the letter should have been suppressed at appellant's trial.

Additionally and alternatively I would hold that the censorship here violated appellant's right to privacy under the California Constitution. This deprivation was not necessary in order to provide for the security of the institution within the meaning of Penal Code section 2600, because minimal notice of censorship could have prevented the intrusion while protecting the jail.

### First Amendment Violation

The majority also concludes that the Humboldt County practice (1) is not censorship and (2) is consistent with the holding in *Procunier* v. *Martinez* (1974) 416 U.S. 396 [40 L.Ed.2d 224, 94 S.Ct. 1800]. I disagree with each of these conclusions.

The definition of "censorship" has never been limited to the actual striking of portions of a communication; "the phenomenon of censorship ...appears in a multitude of forms." (*Taylor* v. *Sterrett* (5th Cir. 1976) 532 F.2d 462, 469.) In *Procunier* v. *Martinez, supra,* the Supreme Court declared that the essence of censorship is "interference with...intended communication." (416 U.S. at pp. 408-409 [40 L.Ed.2d at p. 237].) Such interference may be direct or indirect. For instance, in that case, prison authorities engaged in such censorship practices as refusing to mail or deliver prisoner correspondence, filing disciplinary reports which could lead to suspension of mail privileges, or placing a copy of the letter in the prisoner's file where it might be a factor in determining the inmate's parole date or his work and housing assignments. (*Id.,* at p. 400 [40 L.Ed.2d at p. 233].) These practices illustrate censorship of prison mail both directly, by confiscation, and indirectly, by making use of the contents. (*Taylor* v. *Sterrett, supra,* 532 F.2d 462, 469.) Similarly, in the instant case, the practice of opening and making a copy of an outgoing letter from a pretrial detainee is censorship. Officer McLellan knew what he was doing and was candid: "In *censoring* the mail I open letters...." (Italics added.)

Secondly, I do not understand how this practice meets the requirements of *Procunier* v. *Martinez, supra.* That decision requires that the limitations on First Amendment rights of appellant and of his addressees must "be no greater than is necessary or essential to the protection of the particular governmental interest involved." (*Id.,* at pp. 413-414 [40 L.Ed.2d at p. 240].) With no notice to the detainees that their mail will be opened and read, the system of censorship fails to meet the mandates of *Procunier* v. *Martinez.*[2]

### Due Process Violation

Finally, the Humboldt County practice violates the appellant's due process rights under the Fourteenth Amendment as enunciated in *Procunier* v. *Martinez, supra.* There, the United States Supreme Court

---

[2]Convicted felons are informed of prison censorship regulations as a matter of course when they enter the state prison (Cal.Admin.Code, tit. 15, § 3131); a pretrial detainee deserves no less.

specifically held that any decision to censor or withhold delivery of a particular letter must be accompanied by a minimum of procedural safeguards. (416 U.S. at p. 417 [40 L.Ed.2d at p. 243].) "The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment....As such it is protected from arbitrary invasion." (*Id.*, at p. 418 [40 L.Ed.2d at p. 243].)

There is no evidence in the record that the appellant was informed that his letter had been censored and copied. Appellant was given no opportunity to either protest the decision or decide not to mail the letter. Therefore, there is no need to argue about whether the procedural safeguards of the Humboldt jail met "minimum" standards. The Humboldt jail provided no procedural safeguards whatsoever. This practice violates the due process clause of the the Fourteenth Amendment.

### Conclusion

In sum, the practice of randomly opening or copying the mail of pretrial detainees without notice to either the detainee or the addressee is a violation of both individuals' constitutional rights. As a consequence, the trial court should have suppressed the letter. Since this error is of federal constitutional dimension and because the contents of the inadmissible letter were incriminating, the judgment must be reversed; it cannot be said that the introduction of the letter was harmless beyond a reasonable doubt. (*People* v. *Vargas* (1973) 9 Cal.3d 470, 478 [108 Cal.Rptr. 15, 509 P.2d 959]; *Chapman* v. *California* (1966) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711 87 S.Ct. 824, 24 A.L.R.3d 1065].)

At the very minimum, a pretrial detainee should be afforded notice that while he is in jail awaiting trial a jailer will "open [his] letters and glance through them, looking for filthy language, anything that might catch my eye as far as jail security goes. Just glance through them, don't read every letter unless something catches my eye, and then-...read the letter, and if...appropriate, send a copy to whoever may be involved."

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied January 30, 1980. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.