[No. B027605. Second Dist., Div. Six. Mar. 31, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT DORSEY ELWOOD, Defendant and Appellant.

**COUNSEL**

Jeffrey S. Blanck, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Linda C. Johnson, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—Scott Dorsey Elwood appeals from judgment after jury conviction of two counts of auto theft. (Veh. Code, § 10851.) He

contends the trial court should have excluded a statement he made to himself while alone in an interview room after his arrest. We find no basis for such exclusion. We further find there was substantial evidence to support the jury's verdict, and affirm the judgment.

FACTS

May 15, 1986, appellant came to the home of Michael Dodds and Joseph Root in Bell Canyon and asked Rosa Lopez, a live-in housekeeper, whether she had seen his lost dogs. As Mrs. Lopez did not understand English, she invited him into the house so that Mr. Root's driver, Eddie, could translate for her. Appellant walked by a rack on the wall where keys for all the vehicles were kept.

Several nights later at approximately 11 p.m., Mrs. Lopez heard a car outside, looked out of the window and saw an unfamiliar vehicle in the driveway. She recognized the man sitting in the car as the same person who came to the house several days earlier inquiring about the dogs.

She watched him for several minutes as he backed the car up, parked it on the street, and walked up the driveway. Frightened, she turned on all the interior house lights, telephoned for assistance, and locked herself in the bathroom with Root's two guard dogs. When she ventured forth, appellant was gone.

May 21, 1986, Michael Dodds arrived home at approximately 11 p.m. and parked his 1981 Mercedes in the driveway. The next morning the car was gone. He later discovered missing the spare set of keys kept on the key rack. Later in the summer, Dodds received a call that his car had been impounded. A blue canvas bag found in the car contained a credit slip with appellant's signature on it and business stationery belonging to appellant's mother.

August 8, 1986, at approximately 2 a.m., Joseph Root was awakened by the sound of the engine of his 1985 white stretch limousine. He looked out the window and saw the automobile backing up with its lights off. He called the Bell Canyon security guard, jumped in another car and sped after the limousine. The guard stopped the limousine and asked the driver to turn it around, but the driver, later identified as appellant, drove away.

Subsequently, appellant was arrested and taken to the East Valley Sheriff's Station where he was placed in an interview room. After he refused

to waive his *Miranda* rights,[1] the booking officer left the room momentarily to obtain booking forms. Appellant, unaware that conversations which took place in the interview rooms were monitored by tape recorder, said out loud to himself, "I'm really nailed now," or words to that effect. The booking officer discovered this statement when he replayed the interview tape. During booking, appellant told the officer that he should not be charged with two burglaries since he entered the house only once. The jury did not find appellant guilty of burglary, but only of two counts of auto theft.

## DISCUSSION

1. *Statements in interview room properly admitted.*

██ Appellant contends that his statement to himself, taped in the interview room, constituted a violation of his right to privacy under Penal Code section 2600, as applied in *De Lancie v. Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142], and that the court should have excluded it.[2] Section 2600 provides that a person sentenced to imprisonment in a state prison may, during any period of confinement, be deprived of such rights, and only such rights, as necessary to provide for the reasonable security of the institution and the reasonable protection of the public. ██ Rights protected include the right to privacy. (*People v. Phillips* (1985) 41 Cal.3d 29, 79 [222 Cal.Rptr. 127, 711 P.2d 423].)

*De Lancie* was a civil action for injunctive relief, prompted by disclosures at a trial revealing that personnel at the San Mateo County jail were routinely monitoring conversations between visitors and pretrial detainees. The Supreme Court in *De Lancie* held that allegations charging such monitoring was conducted for purposes other than institutional security stated a cause of action for violation of sections 2600 and 2601. (*De Lancie v. Superior Court, surpa,* 31 Cal.3d 865, 877.) "That holding necessarily implied that secret monitoring of conversations between detainees and visitors, 'undertaken for the purpose of gathering evidence for use in criminal proceedings, rather than to maintain the security of the jail' (*id.*), was unlawful." (*Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 35 [196 Cal.Rptr. 704, 672 P.2d 110].)

*De Lancie* rejected the holding of *North v. Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155] that ordinarily there can be no reasonable expectation of privacy in a jail or a police station

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[2] All statutory references hereinafter are to the Penal Code unless otherwise specified.

and, consequently, routine monitoring of detainee-visitor conversations violated no expectation of privacy. *North's* analysis was based upon *Lanza* v. *New York* (1962) 370 U.S. 139 [8 L.Ed.2d 384, 82 S.Ct. 1218]. Lanza was called to testify before a legislative committee investigating possible corruption in the state parole system. He was granted immunity but refused to answer questions. After he was convicted under a New York penal statute for his willful refusal, Lanza contended that he could not constitutionally be punished because the basis of the committee's questions was a transcript of an electronically intercepted conversation he had with his brother in jail. He asserted that the interception of the jail conversation was a violation of his Fourth Amendment rights. The United States Supreme Court, in upholding Lanza's conviction on independent grounds, stated in dicta that the location of the recorded conversation, a jail visiting room, was not an area within the scope of Fourth Amendment protection. (370 U.S. 139, 143 [8 L.Ed.2d 384, 387-388].) Although this "protected area" analysis of *Lanza* was later repudiated in *Katz* v. *United States* (1967) 389 U.S. 347, 351-352 [19 L.Ed.2d 576, 582, 88 S.Ct. 507] ("the Fourth Amendment protects people not places. . . ."), federal courts have consistently followed *Lanza* and upheld admission of monitored conversations in jails or police stations. (*Donaldson* v. *Superior Court, supra,* 35 Cal.3d at p. 29.) *North* applied the *Lanza* analysis to police station interview rooms. (*Id.,* at p. 29, fn. 3; see also *Williams* v. *Nelson* (9th Cir. 1972) 457 F.2d 376, 377.)

In *Donaldson* v. *Superior Court, supra,* 35 Cal.3d 24, the California Supreme Court explained the three considerations which led the court in *De Lancie* to reject the reasoning of *North*: (1) the obvious need of persons confined to jails for private communication with spouses, families, and friends about matters often of a confidential or intimate nature; (2) sections 2600 and 2601's enacted policy of restoring to inmates those civil rights compatible with prison security; and (3) the failure of *North* and similar cases to make a factual determination that inmates do not subjectively expect privacy, or that such expectations are unreasonable: they simply declared instead a legal proposition that there is no right of privacy in jail. (*Donaldson, supra,* at pp. 35-36; *De Lancie, supra,* 31 Cal.3d at pp. 875-876.) The Supreme Court in *De Lancie* held that the "no expectation of privacy in a police station or jail" doctrine of *North* v. *Superior Court* cannot be justified either as a measure of the conversant's subjective belief or as a judgment on the reasonableness of that belief. (*Donaldson, supra,* at p. 36.) *De Lancie* relied solely upon state grounds and on sections 2600 and 2601 in its analysis. (*People* v. *West* (1985) 170 Cal.App.3d 326, 330-331 [216 Cal.Rptr. 195].)

However, in *Donaldson,* the Supreme Court explained that "Permitting state officials to listen in on such [confidential or intimate] conversations for

reasons unrelated to jail security—indeed without any reason at all—offends the fundamental right of privacy guaranteed by the California Constitution. (Cal. Const., art. I, § 1.)" (*Id.,* at p. 35.) Consequently, even though *De Lancie's* holding did not turn upon whether there was a reasonable expectation of privacy in a custodial setting, it presupposes that monitoring in violation of sections 2600 and 2601, "without any reason at all," violates the fundamental right of privacy guaranteed by the California Constitution.

■ Appellant contends that his verbal musings in the police interview room are protected from revelation by section 2600 unless done to protect institutional security. Respondent introduced no evidence concerning the purposes of the monitoring. Reviewing a claim under section 2600 requires a three-step inquiry into any "rights" implicated, the existence of a "reasonable security" problem which might permit a deprivation of those rights, and the extent to which deprivation of those rights is "necessary" to satisfy reasonable security interest. (*In re Arias* (1986) 42 Cal.3d 667, 689-690 [230 Cal.Rptr. 505, 725 P.2d 664].) Once the moving party shows that his rights are implicated by the governmental action, the burden is respondent's to prove the absence of lesser drastic means. (*Id.,* at p. 697, fn. 34.)

Can it be said that the monitoring in question offends appellant's state-guaranteed right of privacy and, unless justified by a compelling state interest, mandates exclusion of the ill-gotten statements? It cannot. *De Lancie* precludes the monitoring of conversations between pretrial detainees and visitors solely to gather evidence to use in upcoming trials absent any security interest. (*People* v. *Phillips, supra,* 41 Cal.3d 29, 79.) Here, appellant, an arrestee at the time, was not conversing with any other person. Indeed, there was no "conversation." ■ A conversation is an "oral exchange of sentiments, observations, opinions, ideas." (Webster's New Internat. Dict. (3d ed. 1965) p. 498.) To converse is to engage in conversation. (*Ibid.*) It presupposes the presence of another person.

■ Even assuming that appellant's verbalization was a "conversation," section 2600 et seq. provide for no exclusionary remedy for violations of its provision (cf., §§ 631, subd. (c), 632, subd. (d)) but merely delineate rights retained by individuals who are imprisoned. (*People* v. *West, supra,* 170 Cal.App.3d 326, 331; *People* v. *McCaslin* (1986) 178 Cal.App.3d 1, 6 [223 Cal.Rptr. 587].)

■ The California Supreme Court has made clear that in the search and seizure context, the article I, section 1 privacy clause has never been held to establish a broader protection than that provided by the Fourth Amendment of the United States Constitution or article I, section 13 of the

California Constitution. " '[T]he search and seizure and privacy protections [are] coextensive when applied to police surveillance in the criminal context.' [ ] '[Article I, section 1, article I, section 13 and the Fourth Amendment] apply only where parties to the [conversation] have a "reasonable expectation of privacy" with respect to what is said . . . .' [ ]" (*People* v. *Crowson* (1983) 33 Cal.3d 623, 629 [190 Cal.Rptr. 165, 660 P.2d 389], fn. omitted.)

■ Proposition 8 (Cal.Const., art. I, § 28, subd. (d)) precludes exclusion of evidence as a remedy for violations of search and seizure provisions of the federal or state Constitution except to the extent that exclusion remains federally compelled. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) Consequently, unless the Legislature enacts a statutory rule of exclusion by a two-thirds vote of the membership in each house (Cal.Const., art. I, § 28, subd. (d)), the exclusion of evidence obtained through an unlawful search in a custodial setting is governed by federal precedent. (See *People* v. *McCaslin, supra,* 178 Cal.App.3d 1, 6.)

■ Here, appellant was placed in a police interview room for questioning and left alone only for a few moments while the booking officer stepped outside to obtain the necessary forms. There was no breach of any confidential relationship such as attorney-client, husband-wife, or priest-penitent, or the right to "personal visits" as in *De Lancie.* We do not find appellant had—in post-*Katz* terminology—a justifiable expectation of privacy which, if violated, would mandate exclusion of the statement under the federal Constitution. (See *Hudson* v. *Palmer* (1984) 468 U.S. 517 [82 L.Ed.2d 393, 104 S.Ct. 3194].) Consequently, there were no "rights" infringed upon by the governmental action which would shift the burden to respondent to explain the necessity of the monitoring. (See *In re Arias, supra,* 42 Cal.3d 667, 689-690.)

2. *Substantial evidence supports the judgment.*

■ We find meritless appellant's contention that there is insufficient evidence to support his conviction. Two witnesses identified him as the driver of Root's limousine and his signature was found in the canvas bag in the Mercedes along with his mother's stationery. ■ A single witness's uncorroborated testimony, unless physically impossible or inherently improbable, is sufficient to sustain a conviction (*People* v. *Keltie* (1983) 148 Cal.App.3d 773, 781-782 [196 Cal.Rptr. 243].) Purported weaknesses in identification testimony of a single eyewitness are to be evaluated by the jury. (*People* v. *Turner* (1983) 145 Cal.App.3d 658, 671 [193 Cal.Rptr. 614].) ■ The substantial evidence standard of *People* v. *Johnson* (1980) 26 Cal.3d 557, 558 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]

applies with equal force to review of the trier of fact's resolution of conflicting inferences from circumstantial evidence. (*People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].)

The judgment is affirmed.

Gilbert, J., and Abbe, J., concurred.