[No. B041635. Second Dist., Div. Three. Nov. 9, 1989.]

AHMAD A., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

530

---

COUNSEL

Ronald A. Ziff and Abby Besser Klein for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Brent Riggs, Deputy District Attorneys, for Real Party in Interest.

---

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

This writ petition presents the question of whether respondent superior court must exclude evidence of a surreptitiously tape-recorded conversation between a minor and his parent in a police interrogation room. Under the circumstances chronicled here, we answer in the negative.

### FACTUAL AND PROCEDURAL STATEMENT

On February 1, 1989, the Los Angeles District Attorney filed a petition alleging that the minor, 17-year-old Ahmad A., came within the provisions of section 602 of the Welfare and Institutions Code in that he had murdered Gary Bolden with a handgun on or between October 26 and 27, 1988. (Pen. Code, §§ 187, 12022.5, 12022, subd. (a).) Preliminary investigation caused law enforcement to believe the shooting related to narcotics activity and involved the minor's cousin, Gerald Chatters.

Through a message on the victim's telephone answering machine, police became aware the minor had contacted Chatters the night of the victim's death. Having interviewed the minor a day or two following the murder, Los Angeles Police Detective Stephen Fisk took him into custody on January 31 or February 1, 1989, and transported him to Foothill Police Station. Upon arrival, the officer advised him of his constitutional rights; and the minor requested to speak with his mother. The minor and his mother were permitted to converse in an interrogation room with the door closed. However, the police surreptitiously recorded their conversation in which the minor admitted to his mother, " 'We did it, but I didn't pull the trigger.' "[1]

---

[1] The record does not clearly indicate whether the minor had been arrested at this point. Officer Fisk testified that no formal arrest had occurred and the minor "could have left at that time." However, the surrounding circumstances indicate the minor was not, in fact, free to leave and was restrained for purposes of determining custodial interrogation. (See *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554-555 [64 L.Ed.2d 497, 509-510, 100 S.Ct. 1870].) However, in light of our conclusions, his status as an arrestee or detainee is not critical to the disposition.

The District Attorney filed a section 602 petition and moved for a finding of unfitness pursuant to Welfare and Institutions Code section 707, subdivision (b). On February 7, 1989, respondent court commenced a detention hearing in conformance with *In re Dennis H.* (1971) 19 Cal.App.3d 350 [96 Cal.Rptr. 791]. The court overruled the minor's objection that any consideration of the conversation between himself and his mother violated his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and *People* v. *Burton* (1971) 6 Cal.3d 375 [99 Cal.Rptr. 1, 491 P.2d 793].

After additional testimony by Detective Fisk, the court indicated that the course of the proceedings was tending to merge the *Dennis H.* hearing with a probable cause hearing pursuant to *Edsel P.* v. *Superior Court* (1985) 165 Cal.App.3d 763 [211 Cal.Rptr. 869]. Upon the conclusion of evidence from the officer and argument by counsel, the court made factual findings to the following effect: "[T]here is no evidence that suggests that the minor was led to believe he had an expectation of privacy in that interrogation room. . . . The fact that the minor asked to speak to the mother is not the same as giving the mother the status of an attorney so that when there is a conversation that it is protected by that kind of a privilege; so the Court finds that there is no attorney-client privilege between the mother and the minor in this factual situation." The court further concluded "that even if the right of privacy created by [Penal Code] Section 2600 did exist in this case, that there is no remedy for violation of that that would lead to the exclusion of that evidence . . . ."

■ ■■■ Accordingly, the court found probable cause to continue the minor's detention and to believe he was involved in the crime as alleged.[2] ■ ■■■ Following the ruling and prior to the fitness hearing, the court rejected as untimely an attempt to file an affidavit of prejudice pursuant to Code of Civil Procedure section 170.1.[3] The minor

---

[2]In the first of two procedural attacks, the minor contends the court erred in not holding separate and distinct *Dennis H.* and *Edsel P.* hearings. A *Dennis H.* hearing allows the minor to demand substantiation and authentication of the matters upon which his or her further detention is based. (*In re Dennis H., supra,* 19 Cal.App.3d at pp. 354-355.) In *Edsel P.* v. *Superior Court, supra,* 165 Cal.App.3d at pages 781-783, the court affirmed the prosecution's burden to establish a prima facie case even when the alleged offense is one to which a presumption of unfitness attaches under Welfare and Institutions Code section 707, subdivision (b). Hence, whatever procedural distinction may exist between the two hearings, there is no substantive difference. In light of our resolution of the minor's constitutional claims, we perceive no prejudice to his rights or interests in the court's merging the hearings for the sake of judicial economy.

[3]The minor also raises a procedural challenge to the court's finding of untimeliness. We find his objection on review as well untimely in light of the express provisions of Code of Civil Procedure section 170.3, subdivision (d): "The determination of the question of disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate

was found unfit under Welfare and Institutions Code section 707, subdivision (b), and was certified to the superior court for trial as an adult.

He petitioned this court for a peremptory writ of mandate/prohibition, attacking the finding of unfitness as violative of his constitutional and statutory rights. We issued an alternative writ and solicited opposition from the Los Angeles District Attorney as the real party in interest.

## DISCUSSION

The minor bases his claim of error on an asserted violation of his rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution and the provisions of Penal Code section 2600,[4] which by judicial construction apply to pretrial detainees. (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 870-877 [183 Cal.Rptr. 866, 647 P.2d 142].) However, his argument misdirects the analysis by focusing almost exclusively on the alleged infringement rather than considering concurrently the available remedy under relevant United States Supreme Court decisions. As we shall explain, regardless of whether the minor may have suffered a violation of rights, those decisions fail to sustain his implicit·conclusion that exclusion of evidence is the appropriate judicial response.

### I. *Standard of Review*

In the last few years, the California Supreme Court has continued to clarify the scope and impact of Proposition 8, now enacted in relevant part as article I, section 28, subdivision (d), of the California Constitution, on a criminal defendant's right to exclude evidence. Beginning with *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], it concluded: "What [the pertinent portion of] Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*Id.,* at pp. 886-887.) Elaborating, the court explained "that in the absence of express statutory authority therefor courts may not exclude evidence seized in violation of either the state or federal Constitution unless exclusion is compelled by the federal Constitution. . . . [¶] Implicit in the limitation

---

from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." The court ruled on the affidavit of prejudice on March 8, 1989, and the minor filed the instant petition April 27, 1989.

[4]Penal Code section 2600 provides as follows: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

on the courts' power to exclude relevant evidence to the enumerated statutory exceptions is a limitation on the power of the court to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment. [Fn. omitted.]" (*Id.,* at pp. 888-889.)

In *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], and *People* v. *Markham* (1989) 49 Cal.3d 63 [260 Cal.Rptr. 273, 775 P.2d 1042], this construction of the truth-in-evidence provisions of Proposition 8 was applied with equal force to Fifth Amendment and, by implication, related Sixth Amendment issues. Thus, in assessing the continuing viability of the higher state standard of *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272], requiring exclusion of all statements not obtained in compliance with *Miranda* v. *Arizona, supra,* the Supreme Court echoed its earlier conclusions: "We believe that section 28(d) was intended to preclude this kind of reliance on the state Constitution to create new exclusionary rules rejected by applicable decisions of the United States Supreme Court." (*People* v. *May, supra,* 44 Cal.3d at p. 319.) Similarly, in *Markham,* the court determined that "the procedural rule of [*People* v. *Jimenez* (1978) 21 Cal.3d 595, 605 [147 Cal.Rptr. 172, 580 P.2d 672], imposing a beyond a reasonable doubt standard of proof for voluntariness of confessions] accomplishes what a rule founded on independent state constitutional grounds, in the wake of Proposition 8, cannot—exclusion of relevant evidence based upon a standard of proof of voluntariness more stringent than that mandated by the federal Constitution. ■ We have explained that the intent of the electorate in passing Proposition 8 was to *curtail* the exclusion of relevant evidence based upon independent state grounds, except as required by the Constitution of the United States. [Citations.]" (*People* v. *Markham, supra,* 49 Cal.3d at p. 71.)

With these clear and unequivocal pronouncements in mind, we turn to an assessment of the trial court's refusal to accord the minor an exclusionary remedy for the alleged infringement of his constitutional and statutory rights.

## II. *Fourth Amendment and Statutory Violations*

■ The minor predicates his Fourth Amendment claim on the theory that the secret recording of his conversation with his mother violated his reasonable expectation of privacy. After the mother came to the police station at the minor's request, she was escorted to an interrogation room where the minor was waiting. The investigating officer indicated he would

return in a few minutes and closed the door. No representations or inquiries were made as to privacy or confidentiality.

"[The minor's] claim that admission of the intercepted conversation violates the Fourth Amendment cannot surmount the decision of the United States Supreme Court in *Lanza* v. *New York* (1962) 370 U.S. 139 [ ]. The police surreptitiously recorded a visiting room conversation between Lanza and his jailed brother. Lanza later refused to answer questions based on the secret recording in a hearing before a legislative investigating committee. After upholding Lanza's conviction on independent grounds, the Supreme Court added that in any case Lanza could not rely on the Fourth Amendment in refusing to answer the committee's questions because the location of the recorded conversation, a jail visiting room, was not a protected area." (*Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24, 28 [196 Cal.Rptr. 704, 672 P.2d 110].)

Although "*Lanza* epitomized the 'protected areas' type of analysis repudiated by [*Katz* v. *United States* (1967) 389 U.S. 347 (19 L.Ed.2d 576, 88 S.Ct. 507)]," federal courts "have consistently followed *Lanza* and upheld admission of monitored conversations in jails or police stations. 'It still appears to be good law that so far as the Fourth Amendment is concerned, jail officials are free to intercept conversations between a prisoner and a visitor. This was the ruling in *Lanza* v. *New York* [citation] and it appears to have survived *Katz* v. *United States* [citation].' [Citations.]" (35 Cal.3d at pp. 29-30.) "[N]o federal case has repudiated the *Lanza* dictum or excluded a jail or police station conversation from evidence. [Citation.] If occasional state court cases such as [*De Lancie* v. *Superior Court, supra,* 31 Cal.3d 865,] take a different course, they do so on state, not federal grounds. Bound in matters of federal law by the United States Supreme Court, which has never rejected its dictum in *Lanza* v. *New York,* and influenced by decisions of the lower federal courts, we are impelled to conclude that the *Lanza* dictum continues to control in federal law." (*Id.,* at p. 30.)

Beyond the sparse and uncontested facts attested to by the investigating officer, the record contains no evidence of a subjective expectation of privacy as to the minor's conversation with his mother. Moreover, any such belief would not have been objectively reasonable in a police station given the conclusions reached in *Donaldson* v. *Superior Court, supra.*[5] (*Ibid.*)

---

[5] The minor acknowledges that California does not recognize a parent-child privilege of confidentiality (see *De Los Santos* v. *Superior Court* (1980) 27 Cal.3d 677, 683 [166 Cal.Rptr. 172, 613 P.2d 233]); thus his reliance on *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155], to vindicate his reasonable expectation of privacy under the Fourth Amendment is unavailing. In *North,* a pretrial detainee and his wife were permitted to converse in a police detective's office "under circumstances which

Indeed, in the jailhouse the age-old truism still obtains: "Walls have ears."[6] Thus, we hold the minor had no right to exclusion of the evidence under the Fourth Amendment. (See also *People* v. *Lucero* (1987) 190 Cal.App.3d 1065, 1067-1069 [235 Cal.Rptr. 751].)

■ We similarly resolve the minor's claims under Penal Code section 2600. While *De Lancie* v. *Superior Court, supra,* established the right of pretrial detainees to a reasonable expectation of privacy even within the confines of jail, the statute does not provide for exclusion of evidence in the event law enforcement fails to honor that expectation. (See *People* v. *Carrera* (1989) 49 Cal.3d 291, 326 [261 Cal.Rptr. 348, 777 P.2d 121]; *Donaldson* v. *Superior Court, supra,* 35 Cal.3d at p. 34; *People* v. *Elwood* (1988) 199 Cal.App.3d 1365, 1371 [245 Cal.Rptr. 585].) Since exclusion is not otherwise federally compelled, it may not be judicially invoked in the wake of Proposition 8. (*People* v. *McCaslin* (1986) 178 Cal.App.3d 1, 6-7 [223 Cal.Rptr. 587]; *People* v. *West* (1985) 170 Cal.App.3d 326, 330-331 [216 Cal.Rptr. 195].)

III. *Fifth and Sixth Amendment Violations*

■ In *People* v. *Burton, supra,* 6 Cal.3d 375, the California Supreme Court established a per se rule that when "a minor is taken into custody and is subjected to interrogation, without the presence of an attorney, his request to see one of his parents, made at any time prior to or during questioning, must, in the absence of evidence demanding a contrary conclusion, be construed to indicate that the minor suspect desires to invoke his Fifth Amendment privilege." (*Id.,* at pp. 383-384; see *People* v. *Rivera* (1985) 41 Cal.3d 388, 394 [221 Cal.Rptr. 562, 710 P.2d 362].) Thus inspired, the minor attempts to equate his request to speak with his mother with a request for an attorney and its attendant protections consistent with the mandate of *Miranda* v. *Arizona, supra.* Since any conversation occurring in the context of an attorney-client relationship is privileged regardless of the

---

strongly indicate[d] that [they] were lulled into believing that their conversation would be confidential." (*Id.,* at p. 311.) In *Lanza* v. *New York* (1962) 370 U.S. 139 [8 L.Ed.2d 384, 82 S.Ct. 1218], the United States Supreme Court noted that even in a jail setting, "the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection . . . . [Fn. omitted.]" (*Lanza* v. *New York, supra,* 370 U.S. at pp. 143-144 [8 L.Ed.2d at p. 388].) In light of this dictum, the "particularized confidentiality" recognized in California's husband-wife privilege (Evid. Code, § 980 et seq.) insulated the conversation in *North* when circumstances reflected an otherwise reasonable expectation of privacy. (*North* v. *Superior Court, supra,* 8 Cal.3d at pp. 310-311.) However, the court emphasized, consistent with *Lanza,* that such findings depended on "exceptions which focus upon the special relationship between the communicants." (*Id.,* at p. 309.) As the minor concedes, no such relationship obtains under the facts of this case. (See *id.,* at p. 310; *In re Terry W.* (1976) 59 Cal.App.3d 745, 747-749 [130 Cal.Rptr. 913].)

[6]Cervantes, Don Quixote (1615) part II, chapter 48.

situs (see Evid. Code, § 954; see also *People* v. *Lopez* (1963) 60 Cal.2d 223, 248 [32 Cal.Rptr. 424, 384 P.2d 16], cert. den. (1964) 375 U.S. 994 [11 L.Ed.2d 480, 84 S.Ct. 634], rehg. den. 376 U.S. 939 [11 L.Ed.2d 660, 84 S.Ct. 794]), the minor argues that the same confidentiality should obtain for an analogous conversation between a minor and his parent. As with his Fourth Amendment claim, however, United States Supreme Court decisions provide no federal remedy of exclusion under these facts. (See also *In re Terry W., supra,* 59 Cal.App.3d at pp. 747-749.)

In *Fare* v. *Michael C.* (1979) 442 U.S. 707 [61 L.Ed.2d 197, 99 S.Ct. 2560], rehearing denied 444 U.S. 887 [62 L.Ed.2d 121, 100 S.Ct. 186], the court rejected any per se extension of *Miranda*'s prophylaxis, concluding instead that "[w]here the age and experience of a juvenile indicate that his request for his . . . parents is, in fact, an invocation of his right to remain silent, [a totality-of-the-circumstances] approach will allow the court the necessary flexibility to take this into account in making a waiver determination." (*Id.,* at p. 725 [61 L.Ed.2d at p. 213].) In part, the court reasoned only the request for a lawyer could automatically trigger constitutional protections as "the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation. [¶] The per se aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversary system of criminal justice in this country. Whether it is a minor or an adult who stands accused, the lawyer is the one person to whom society as a whole looks as the protector of the legal rights of that person in his dealings with the police and the courts." (*Id.,* at p. 719 [61 L.Ed.2d at pp. 208-209].)

This analysis necessarily implies that even when, as here, the police honor a minor's request to see a parent as an invocation of the privilege against self-incrimination, subsequent communication between the minor and parent is not protected under the Sixth Amendment right to counsel. Although *Fare* v. *Michael C.* involved a request for the minor's probation officer, the following observations apply equally to a request for a parent: "A probation officer is not in the same posture with regard to either the accused or the system of justice as a whole. Often he is not trained in the law, and so is not in a position to advise the accused as to his legal rights. Neither is he a trained advocate, skilled in the representation of the interests of his client before both police and courts. He does not assume the power to act on behalf of his client by virtue of his status as adviser, nor are the communications of the accused to the probation officer shielded by the lawyer-client privilege." (442 U.S. at p. 719; see also *North* v. *Superior Court, supra,* 8 Cal.3d at p. 310; *In re Terry W., supra,* 59 Cal.App.3d at pp. 748-749.) Simply stated, "the parental role does not equate with the attorney's role in

an interrogation by police." (*People* v. *Maestas* (1987) 194 Cal.App.3d 1499, 1510, fn. 9 [240 Cal.Rptr. 360].)

The United States Supreme Court has categorically refused to extend the rationale of *Miranda* and its remedy of exclusion beyond the impetus in part derived from the attorney-client relationship. Our state high court has also recognized in *People* v. *Rivera, supra,* 41 Cal.3d at page 395, "that the *Burton* rule—equating a juvenile's request to speak to a parent with the invocation of his privilege against self-incrimination—may not be compelled by the *federal* self-incrimination clause . . . ." We thus conclude, in light of *May* and *Markham,* that the minor's request to speak with a parent did not enlarge his Fifth and Sixth Amendment guaranties nor invoke the right to bar otherwise admissible statements.

### DISPOSITION

The alternative writ is discharged. The petition for writ of mandate/prohibition is denied.

Klein, P. J., and Croskey, J., concurred.

On November 30, 1990, the opinion was modified to read as printed above. Petitioner's application for review by the Supreme Court was denied March 1, 1990. Mosk, J., and Broussard, J., were of the opinion that the application should be granted.