Filed 8/18/16  P. v. Mayberry CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B261300 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA098576) |
| v. | |
| DONALD MAYBERRY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Mona D. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Noah P. Hill and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Donald Mayberry appeals from a judgment which sentences him to four years in state prison for resisting an executive officer lawfully performing his duties. (Pen. Code, § 69.)[1] On appeal, Mayberry contends there was insufficient evidence to prove the officer was lawfully performing his duties at the time of the incident. Mayberry also contends the trial court erred in instructing the jury, and in ruling on his *Pitchess*[2] and new trial motions. We affirm the judgment.

### FACTS

A number of Los Angeles County Sheriff's Deputies, including Victor Locklin and Ricardo Duarte, were in plain clothes at the Willow Blue Line Station in Long Beach on March 12, 2014, checking fares as passengers exited the train. Deputy Locklin did not interact with the passengers, but served as backup to the other officers. Fare security assistants also checked fares.

A video of the incident showed Deputy Anaya interacting with Mayberry. In it, Mayberry handed his access card or transit access pass (TAP) to Deputy Anaya, who put the card to his electronic TAP reader. Deputy Locklin noticed Mayberry and Deputy Anaya after Mayberry became upset, shouted profanities, and stated he was tired of always being harassed by the police. Deputy Locklin also heard Mayberry offer to pay the fare when Deputy Anaya told him he did not have a valid fare. Mayberry became louder and more upset when Deputy Anaya asked him for identification so as to issue him a citation. Mayberry said his identification was in one of his bags and pointed to it. Deputy Locklin then offered to get Mayberry's identification for him in an attempt to calm him down. When Deputy Locklin reached for the bag, Mayberry became more agitated, responding, "Don't touch my f'n bag" and "Don't go into my shit."

Deputy Anaya announced he was placing Mayberry under arrest and then reached for him. Deputy Anaya managed to grab Mayberry's arm and put it behind his back.

---

[1]     All further section references are to the Penal Code unless otherwise specified.

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

Deputy Duarte placed a handcuff on one of Mayberry's wrists, but Mayberry broke loose before the second handcuff could be placed on his other wrist. Agitated, Mayberry struggled to break away. He waved his handcuffed arm in the air. Fearing the handcuff could be used as a weapon, the deputies backed away. Deputies Anaya and Duarte unsuccessfully tried to grab Mayberry. Deputy Locklin put Mayberry in a bear hug to get him away from the edge of the platform. Mayberry knocked Deputy Locklin off balance and to the ground. Deputy Locklin let go of Mayberry and the other deputies eventually managed to subdue him.

Deputies Duarte and Locklin testified to the events described above. Additionally, Deputy Duarte testified he saw Mayberry look around as if to size up all of the deputies. Deputy Duarte believed the situation would escalate. As a result, he positioned himself behind Mayberry to expedite handcuffing him. As Mayberry struggled with the other deputies, Deputy Duarte struck him on the shoulder three or four times with his miniature baton to subdue him. Deputies Locklin and Duarte sustained minor injuries from the struggle with Mayberry. At trial, the defense rested without presenting any evidence.

The jury returned a guilty verdict for the charge of resisting an executive officer in violation of section 69.[3] The trial court subsequently found true the further allegations that Mayberry suffered a prior strike conviction (§§ 667 subd. (d), 1170.12, subd. (b)) and served five prior prison terms. (§ 667.5 subd. (b).) At sentencing, the trial court struck the five one-year prior prison term enhancements and denied probation. Mayberry was sentenced to four years in state prison, consisting of the middle term of two years, doubled due to his prior strike. He timely appealed.

## DISCUSSION

### I. Sufficient Evidence Supports the Conviction for Resisting an Executive Officer

Mayberry contends his conviction for resisting an executive officer is not supported by substantial evidence. Specifically, he claims that without Deputy Anaya's

---

[3] The remaining three counts for unlawful use of force and infliction of an injury in violation of section 243, subdivision (c)(2) were stricken upon the People's motion.

testimony, there is no evidence Deputy Anaya was engaged in the lawful performance of an official duty when Mayberry resisted the deputies who tried to handcuff him. Only Deputy Anaya, says Mayberry, could have presented competent evidence that Mayberry evaded paying a fare because Deputy Anaya was the only one to look at the TAP reader. Specifically, if Mayberry had a valid fare and Deputy Anaya gave him a citation anyway, he would have done so unlawfully.

The standard of review we employ is well established: "'To determine whether sufficient evidence supports a jury verdict, a reviewing court reviews the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable jury could find the defendant guilty beyond a reasonable doubt.' [Citation.]" (*People v. Smith* (2014) 60 Cal.4th 603, 617.) "'"On appeal, we . . . must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]"'" (*People v. White* (2014) 230 Cal.App.4th 305, 315, fn. 13.)

When the evidence is circumstantial, "'[w]e 'must accept logical inferences that the jury might have drawn from the circumstantial evidence.' 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt.' Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal."'" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87 [citations omitted].)

4

Section 69 "'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.'" (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 255, quoting *In re Manuel G.* (1997) 16 Cal.4th 805, 814.) In this case, we are concerned with what the latter means. The California Supreme Court has explained, "the long-standing rule in California . . . is that a defendant cannot be convicted of an offense against a peace officer '"*engaged in . . . the performance of . . .* [his or her] *duties*"' unless the officer was acting lawfully at the time the offense against the officer was committed. [Citations.] '"The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . . [¶] . . . [T]he lawfulness of the victim's conduct forms part of the corpus delicti of the offense."'" (*In re Manuel G.* (1997) 16 Cal. 4th 805, 815, quoting *People v. Gonzalez* (1990) 51 Cal.3d 1179.)

Mayberry does not contend that issuing him a citation for failing to have the proper fare is not a lawful duty of a police officer, only that the evidence was insufficient to prove that is what occurred. We disagree. Even without Deputy Anaya's testimony, the record shows the deputies were engaged in the lawful performance of their duties when Mayberry was arrested. The evidence showed the deputies were working fare enforcement on March 12, 2014. Deputy Locklin explained that each passenger was asked to show a valid fare as he or she exited the train. The video showed Deputy Anaya interacting with Mayberry and Mayberry showing him an access card. Thereafter, Deputy Locklin heard Mayberry exclaim that he had the money to pay the fare and offer to pay the fare. Mayberry then indicated he had identification, but it was in his bag. Deputy Locklin was approximately five feet away when he heard Mayberry make those statements. By this time, Mayberry's profane shouting was loud enough to draw the attention of the other deputies. The evidence showing the officers were conducting a "fare enforcement op" and Mayberry's offer to pay constitute sufficient evidence for a

5

rational juror to conclude Mayberry did not have a valid fare even without testimony regarding Deputy Anaya's out-of-court statements.

We are not persuaded by Mayberry's attempt to discredit the deputies' testimony by asserting they were not close enough to hear what was being said and were not paying attention. Purported weaknesses in the testimony of an eyewitness are to be evaluated by the jury. (*People v. Elwood* (1988) 199 Cal.App.3d 1365, 1372.) Neither are we persuaded that Deputy Duarte's more ambiguous testimony regarding Mayberry's statements about his fare negate Deputy Locklin's stronger testimony. Initially, Deputy Duarte testified Mayberry claimed he had paid the fare, but Deputy Anaya explained to him that there was no fare on his TAP card, and that he was going to receive a citation. When he was subsequently questioned about this testimony, Deputy Duarte clarified, "I do not recall that. I know he said he had something on his card, but I don't know whether he meant money or as far as if it was valid or what because that was between him and Deputy Anaya." It is well settled that conflicts in testimony do not justify reversal of a judgment. (*People v. Allen* (1985) 165 Cal.App.3d 616, 623.) Further, the testimony of a single witness is sufficient to support a criminal conviction barring physical impossibility or inherent improbability. (*People v. Elwood, supra,* 199 Cal.App.3d at p. 1372.)

Additionally, the evidence supporting the judgment was competent. The video showed Deputy Anaya's interaction with Mayberry. Mayberry does not dispute the competency of Deputy Locklin's testimony about his offer to pay the fare. Indeed, the trial court found Mayberry's out-of-court statement to be a "party-opponent admission." Mayberry does not challenge the trial court's ruling on this.

Nevertheless, Mayberry contends his own "contradictory statements do not constitute substantial, solid evidence, as is required, of a necessary element of the offense." Here, Mayberry argues there must be proof outside of the defendant's own utterances for the corpus delicti of section 69 to be proved. It is true that "[i]n every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself--i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its

6

cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.] Though mandated by no statute, and never deemed a constitutional guaranty, the rule requiring some independent proof of the corpus delicti has roots in the common law. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169.)

As discussed above, we do not merely rely on Mayberry's own admission to show Deputy Anaya was lawfully performing his duty. Instead, the deputies' testimony about the fare enforcement activity and the video showing Deputy Anaya's initial interaction with Mayberry, including that Deputy Anaya checked Mayberry's access card on his TAP reader, offer sufficient evidence beyond Mayberry's comments. "The independent proof may be by circumstantial evidence [citation], and it need not be beyond a reasonable doubt. A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. [Citations.]" (*People v. Alcala* (1984) 36 Cal.3d 604, 624-625; *People v. Gutierrez* (2002) 28 Cal. 4th 1083, 1126-1128.) "We reemphasize that the quantum of evidence the People must produce in order to satisfy the corpus delicti rule is quite modest; case law describes it as a 'slight or prima facie' showing. [Citations.]" (*People v. Jennings* (1991) 53 Cal.3d 334, 368.) Such was present in this case.

## II. The Trial Court Was Not Required to Sua Sponte Issue A Jury Instruction On Deputy Anaya's Out-of-Court Statement

At trial, Deputy Locklin testified he heard Mayberry offer to pay the fare when Deputy Anaya told him he did not have a valid fare. He also testified that Deputy Anaya announced he would place Mayberry under arrest. The trial court overruled defense counsel's hearsay objection to this testimony, finding it was not being admitted for the truth of the matter. Mayberry argues, "[n]o juror would likely have understood that Deputy Locklin's testimony regarding Deputy Anaya's statement being admitted 'not for the truth' in fact meant that a statement such as Deputy Anaya 'decided to arrest' appellant did not stand for the ultimate fact that Deputy Anaya had in fact made a lawful

7

arrest of appellant." Mayberry contends the trial court erred in failing to sua sponte instruct the jury on how to consider the testimony regarding Deputy Anaya's out-of-court statements. We disagree.

First, the instruction was never requested. (*People v. Gutierrez, supra,* 28 Cal.4th at p. 1134.) Second, any error resulting from the omission was harmless. Reversal on instructional error is required only if "the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Wright* (1988) 45 Cal.3d 1126, 1144-1154 [applying *Watson* to find instructional error harmless].)

Our review of the entire record in this case leads us to conclude that it is not reasonably probable that had an instruction been given about hearsay evidence, the jury would have reached a verdict more favorable to defendant. We base this conclusion on the overall strength of the evidence and the absence of any indication the jury was uncertain or confused. The evidence showed the deputies were conducting a fare enforcement operation, Mayberry gave his access card to Deputy Anaya to check, there was no valid fare on it, he then became agitated, and offered to pay the fare. Further, when defense counsel objected to testimony about Deputy Anaya's statements, the trial court indicated each time that the testimony was not being admitted for its "truth." There was no indication from the jury that it was confused about the trial court's comments.

III.    **The Trial Court Properly Denied The New Trial Motion**

After the jury returned its verdict, Mayberry moved for a new trial, claiming there was insufficient evidence to establish Deputy Anaya was lawfully performing his duties at the time of the incident. The trial court denied the motion. Mayberry now contends the new trial motion should have been granted for the same reasons discussed above, that is, there was a lack of substantial evidence to support the judgment. Because we find more than substantial evidence to support the judgment, the trial court did not err when it denied the motion for new trial. (*People v. Ault* (2004) 33 Cal.4th 1250, 1262.)

**IV.    No Other Documents Are Required To Be Disclosed Under *Pitchess***

On April 7, 2014, Mayberry sought discovery and disclosure of the personnel records of Deputies Amaya, Duarte, Locklin, Bandow and Ramirez, all of whom were present during the incident.  Specifically, Mayberry requested records relating to complaints against these deputies of violence, excessive force, false arrest, dishonesty or "any other evidence of misconduct amounting to moral turpitude" as well as any discipline imposed as a result.  The trial court granted Mayberry's *Pitchess* motion and conducted an in camera hearing to review the deputies' personnel records for this information.

Mayberry requests we conduct an independent review of the records the trial court reviewed in ruling on his *Pitchess* motion in order to determine whether the trial court properly ruled on his motion.  The record here is adequate to permit meaningful appellate review.  It includes a full transcript of the in camera hearing.  Further, the trial court stated for the record what documents it examined.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.)

We have examined the record of the trial court's in camera review of the requested personnel files and find "no [other] materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)  The trial court did not abuse its discretion.

**DISPOSITION**

The judgment is affirmed.


                                                                                                  BIGELOW, P.J.

We concur:



                              FLIER, J.                                                GRIMES, J.

9
