[No. C019777. Third Dist. Dec. 31, 1996.]

SACRAMENTO COUNTY DEPUTY SHERIFFS' ASSOCIATION et al., Plaintiffs and Appellants, v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents.

1470

## Counsel

Mastagni, Holstedt & Chiurazzi and Curtis S. Leavitt for Plaintiffs and Appellants.

Porter, Scott, Weiberg & Delehant, A. Irving Scott, Carissa A. Shubb and Stephen E. Horan for Defendants and Respondents.

## Opinion

**SIMS, J.**—In this civil action by county jail employees arising from warrantless video surveillance of a county jail office, plaintiffs—Sacramento County Deputy Sheriffs' Association (the Association) and Deputy Sheriffs Dennis Prizmich, Scott Eckert, and Ray Roberts—appeal from summary judgment entered in favor of defendants Sacramento County, Sacramento County Sheriff's Department, Sheriff Glen Craig, Undersheriff Arthur Henrickson, Chief Robert Denham, and Captain Richard McKee. The trial court determined plaintiffs had no reasonable expectation of privacy. Plaintiffs contend summary judgment was improperly granted because the videotaping

assertedly (1) violated protections against unlawful search and seizure (U.S. Const., 4th Amend.;[1] Cal. Const., art. I, § 13[2]), (2) violated statutory prohibitions against invasion of privacy (Pen. Code, § 632 et seq.), and (3) constituted a tortious intrusion into plaintiffs' seclusion. We shall affirm the judgment.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute involves placement of a video camera in the release office of the county jail.

Between February and April 1993, the main jail division of the Sacramento County Sheriff's Department experienced 11 incidents where inmates' money (totaling $1,124) was missing from the cashier/release office area in the booking loop section of the main jail. Cash on a newly admitted inmate is received at the cashier's office and placed in a file area for a release officer to remove when the inmate is released.

The main jail division began an investigation and determined nine of these cases were thefts. In connection with the criminal investigation, under the supervision of Lieutenant Bill Roberts, a concealed video surveillance camera was placed in the ceiling overlooking the cashier's register and safe in the cashier's office. Only supervisors and managers were informed of placement of the camera. The video camera had no audio capabilities.

It was subsequently determined many of the thefts had occurred from the release office adjacent to the cashier's office, and on April 16, 1993, the camera—still with no audio capabilities—was moved to the release office and placed to view the countertop where inmates' files were placed. Managers, supervisors and some jail staff were aware of this camera placement. No warrant was obtained.

---

[1]The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2]California Constitution, article I, section 13, provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the person and things to be seized."

[3]Plaintiffs make no contention under the privacy provision of California Constitution, article I, section 1. We therefore have no occasion to consider that provision or the authorities construing it.

We also have no occasion in this appeal to determine whether any evidence obtained by videotaping would be admissible in criminal proceedings.

The release office, a small room about seven feet by twelve feet, is adjacent to the cashier's office. A solid wood door separates the release office from the cashier's office, and a solid wood door separates the cashier's office from the jail corridor. Thus, a person must pass through the cashier's office to enter the release office. The doors to the cashier's office and release office are normally secured in an open position. The release office door did not have a lock at the time in question. The release office has two windows which have been covered and sealed. There is an L-shaped counter holding two computer terminals, and space for two chairs.[4]

The release office was accessible to employees working at the main jail—including civilian employees, booking officers, and collections employees. Although the office was not generally accessible to inmates, inmates entered the room on supervised cleaning detail. Additionally, plaintiff Eckert testified in deposition that outside agency personnel sometimes went into the release office to use the phone.

At the time of the video surveillance, plaintiff Prizmich was a Sacramento County sheriff's deputy assigned to the main jail, who was working approximately one day per week in the release office. It is undisputed he was the only plaintiff who had any official business in the release office while the video camera was placed there.

On April 17, 1993, the day after the camera had been placed in the release office, Prizmich and another deputy noticed something sticking out of a vent and discovered the camera. Deputies removed the camera at the direction of Wendell Phillips, president of the Association.

As of the time of the trial court proceedings, the thief remained unidentified.

On September 17, 1993, plaintiffs filed this lawsuit alleging (1) wrongful search and seizure in violation of the Fourth Amendment of the federal Constitution and article I, section 13, of the state Constitution,[5] (2) invasion of privacy in violation of Penal Code section 632, (3) physical intrusion into

---

[4]The camera was apparently positioned to take in most of the room. Thus, Prizmich filed a declaration stating he viewed the videotape, which showed 80 percent of the release office, including the door, both windows, three of the four walls, 80 percent of the L-shaped counter, all of the files, one of the computer terminals and its chair.

[5]The parties appear to agree the complaint of unlawful search and seizure presented a federal civil rights claim under 42 United States Code section 1983 (hereafter section 1983), which provides in part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the

plaintiffs' seclusion, and (4) unfair labor practice. The pleading sought compensatory damages, punitive damages, "other relief" as the court may deem proper, and (under the fourth count) injunctive relief restricting future use of surveillance. Though the pleading was filed as a class action, the trial court granted defendants' motion to decertify the class action and strike the Association as class representative. The trial court also granted a defense motion for summary adjudication on the unfair labor practice claim.

In September 1994, defendants moved for summary judgment, asserting among other things that plaintiffs had no subjective or objectively reasonable expectation of privacy under the circumstances.

In opposition to the motion for summary judgment, two plaintiffs submitted declarations stating they had a "subjective expectation of privacy" while in the release office, because (1) access was limited to jail employees,[6] (2) the office was not visible from the public service area of the jail or from the outside, (3) activities in the office could not be seen or overheard by persons not present, (4) there were no catwalks or galleries from which the office could be observed, (5) they had never heard of video surveillance being used as an investigative technique in the main jail, (6) while in the office they could observe or overhear anyone approaching, (7) no provision in the employee manual or collective bargaining agreement authorized the use of video surveillance, (8) they would store personal belongings in the office, and (9) they did not believe they were subject to video surveillance in that location.

Prizmich attested he used the office for playing cards, balancing his checkbook, checking statistics for a "fantasy football league," and undoing his pants so as to tuck in his shirt. Prizmich said he closed the door when he

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Although the pleading did not cite section 1983, that omission is not fatal. (1 Steinglass, Section 1983 Litigation in State Courts (1996) § 12.3(a), p. 12-16, citing *Best* v. *California Apprenticeship Council* (1987) 193 Cal.App.3d 1448 [240 Cal.Rptr. 1].)

It does not appear, however, that section 1983 would provide a cause of action for violation of the state Constitution. (See *Gomez* v. *Toledo* (1980) 446 U.S. 635, 640 [64 L.Ed.2d 572, 577, 100 S.Ct. 1920] [section 1983 action must allege deprivation of federal right].) Nevertheless, defendants on appeal make no challenge to the viability of a damages action for an asserted violation of the California Constitution. Since we will conclude there was no violation in this case, we need not decide what the remedy for such a violation would be.

[6]The declarations conflict with admissions in plaintiffs' appellate brief that inmates on supervised cleaning detail entered the release office. We may use the statement in the appellate brief as an admission. (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [242 Cal.Rptr. 368].)

did anything private, and he had "been informed" the office was his to maintain and control when he was assigned as release officer. He declared he could keep people from entering the office. Plaintiff Eckert attested he used the office to drop his pants and adjust bandages around a knee injury. Though plaintiff Ray Roberts apparently submitted no declaration, his deposition testimony (submitted by defendants) indicated only that he had engaged in private conversations in the office. Though the camera had no audio capabilities, all plaintiffs made a point of asserting they used the office for private conversations. Plaintiffs argued their expectation of privacy was reasonable.

The reporter's transcript of the hearing on the summary judgment motion shows defense counsel argued plaintiffs had no viable claims, because there was no evidence any of the plaintiffs were captured on film. The trial court responded it was defendants' burden, as the parties moving for summary judgment, to present evidence that plaintiffs were not captured on film, and moreover the record supported an inference that plaintiffs were caught on film. Defense counsel disagreed. Plaintiffs' counsel stated he had supplemental declarations from plaintiffs concerning their being caught on the tape. The trial court said it did not need them but would allow them to be filed with the court. The declarations—from Prizmich and Ray Roberts —attest they viewed the videotape and saw themselves on it.[7]

The trial court granted defendants' motion for summary judgment, stating "The plaintiffs have no reasonable expectation of privacy from video surveillance within the release room."

Judgment was entered in favor of defendants.

Plaintiffs appeal, challenging only the summary judgment decision.

DISCUSSION

I. *Standard of Review*

■ A motion for summary judgment will be granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c; *Jacobs* v. *Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1268 [42

---

[7]These documents were not part of the original superior court record transmitted to this court. We granted plaintiffs' request to augment the record with these documents—a request unopposed by defendants.

Cal.Rptr.2d 906].) A defendant may show entitlement to summary judgment either by showing one or more elements of each cause of action cannot be established, or by establishing an affirmative defense. (*Ibid.*) Since a summary judgment motion raises only questions of law, our review is de novo, applying the same analysis required of the trial court. (*Jacobs, supra,* 36 Cal.App.4th at p. 1268.) We analyze the issues framed by the pleadings, determine whether the moving party has established facts that negate the opposing party's claims and, where the moving party has made a prima facie showing justifying summary judgment, determine whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Ibid.*)

## II.  *Constitutional Claims*

As indicated, plaintiffs' first cause of action alleges a civil rights claim based on an allegedly unconstitutional search and seizure by government actors acting under color of law. Plaintiffs contend they had a reasonable expectation of privacy against being videotaped in the release office such that the warrantless video surveillance constituted an unlawful search and seizure. We disagree.

Before undertaking our analysis, we comment on several factual matters. First, as indicated, the augmented record does contain evidence that Prizmich and Ray Roberts were "caught on tape." This thus disposes of defendants' contention on appeal that those plaintiffs have no viable claim because there is no evidence they were caught on tape, hence no evidence of an infringement of their personal rights. We therefore need not address the issues of (1) whether being caught on the tape was a prerequisite to those plaintiffs' claims, or (2) who had the burden on this issue at the summary judgment stage. Since we will conclude the claims of Prizmich and Ray Roberts fail because there was no reasonable expectation of privacy, the same reasoning would preclude Eckert's claims, regardless of whether he has standing or whether it was defendants' burden to show he was not caught on tape. Defendants do not expressly challenge the Association's standing.

Second, defendants contend there was no evidence that anything private was recorded. Plaintiffs reply it does not matter whether they were filmed while actually engaged in private conduct. We need not decide the matter, because we will affirm the judgment on the ground that plaintiffs had no reasonable expectation of privacy against being videotaped in the release office.

Finally, on appeal plaintiffs again make a point of asserting they had personal conversations in the release office. Since the video camera had no

audio capabilities and plaintiffs make no contention that the content of their conversations was in any way discernible from the videotape, we consider the point to be without consequence.

We turn now to plaintiffs' contentions. They argue reversal is required because they had a reasonable expectation of privacy under the circumstances. We disagree.

■ "[T]he touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.' [Citation.] The Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as "reasonable." ' [Citation.]" (*Oliver* v. *United States* (1984) 466 U.S. 170, 177 [80 L.Ed.2d 214, 223, 104 S.Ct. 1735].)

"No single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant. [Citation.] In assessing the degree to which a search infringes upon individual privacy, the Court has given weight to such factors as the intention of the Framers of the Fourth Amendment [citations], the uses to which the individual has put a location [citations], and our societal understanding that certain areas deserve the most scrupulous protection from government invasion [citations]." (*Oliver* v. *United States, supra*, 466 U.S. at p. 178 [80 L.Ed.2d at pp. 223-224] [warrantless search of marijuana fields permissible].)

■ "The Fourth Amendment prohibits only unreasonable searches . . . . [¶] The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (*Bell* v. *Wolfish* (1979) 441 U.S. 520, 558-559 [60 L.Ed.2d 447, 481, 99 S.Ct. 1861].)

"When law enforcement officers use information-gathering techniques that interfere with a defendant's subjective privacy expectations, the issue then becomes whether the privacy expectation was reasonable in relation to the particular governmental conduct." (*People* v. *Henderson* (1990) 220 Cal.App.3d 1632, 1644 [270 Cal.Rptr. 248].)

"Videotaping is a form of conduct which, if used by law enforcement to intrude on the reasonable and justifiable privacy interests of an individual, is

subject, like any other governmental action, to the limitations of the Fourth Amendment and the requirements formulated in the cases construing that amendment. . . ." (*People* v. *Henderson, supra,* 220 Cal.App.3d at p. 1646.) " '[S]ecretly televising people (or taking still or moving pictures of them) while they are in what they think is a private place is an even greater intrusion on privacy than secretly recording their conversations.' " (*Id.* at p. 1647, citing *United States* v. *Torres* (7th Cir. 1984) 751 F.2d 875, 878.)

"The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. [Fn. omitted.] Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." (*Oliver* v. *United States, supra,* 466 U.S. at pp. 182-183 [80 L.Ed.2d at p. 227].)

Here, plaintiffs contend they had an objectively reasonable expectation of privacy when they were in the release office with the door closed. We will conclude plaintiffs had no objectively reasonable expectation of privacy against being videotaped in the release office.[8]

Fourth Amendment jurisprudence reveals a long history of judicial recognition that privacy expectations may be diminished in prison or jail settings, due to institutional security concerns. Although the cases focused on inmates or visitors rather than employees, we will conclude the same principle applies to deputy sheriffs who accept employment in that setting.

Thus, *Lanza* v. *New York* (1962) 370 U.S. 139 [8 L.Ed.2d 384, 82 S.Ct. 1218], stated in dictum that there was no Fourth Amendment violation in the electronic audiotaping of a jailhouse conversation between an inmate and his brother. "[A] jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day." (*Id.* at p. 143 [8 L.Ed.2d at p. 388], fn. omitted.)

---

[8]Plaintiffs also contend they had a subjective expectation of privacy. They cite a concurring opinion in *Katz* v. *United States* (1967) 389 U.S. 347, 361 [19 L.Ed.2d 576, 587-588, 88 S.Ct. 507] that an expectation of privacy is justifiable if the person has an actual subjective expectation of privacy and the expectation is one that society is prepared to recognize as reasonable. The United States Supreme Court later clarified the latter is the more important requirement. (*Hudson* v. *Palmer* (1984) 468 U.S. 517, 525, fn. 7 [82 L.Ed.2d 393, 402, 104 S.Ct. 3194].) "[C]onstitutional rights are generally not defined by the subjective intent of those asserting the rights. The problems inherent in such a standard are self-evident." (*Ibid.*) "The [Fourth] Amendment does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as "reasonable." ' " (*Oliver* v. *United States, supra,* 466 U.S. at p. 177 [80 L.Ed.2d at p. 223].)

Thus, even assuming plaintiffs had a subjective expectation of privacy while in the release office, we will conclude there was no objectively reasonable expectation of privacy, hence the constitutional claim fails.

The "protected area" analysis of *Lanza* was later repudiated in *Katz v. United States, supra*, 389 U.S. 347 [19 L.Ed.2d 576], which held the Fourth Amendment "protects people, not places. . . . [W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (*Id.* at pp. 351-352 [19 L.Ed.2d at p. 582] [person in public phone booth had reasonable expectation of privacy in contents of telephone calls].)

Nevertheless, although the Fourth Amendment protects people, not places, the particular setting remains a consideration in determining whether a Fourth Amendment violation exists. Thus, as indicated, the post-*Katz* case of *Oliver v. United States, supra*, 466 U.S. 170 [80 L.Ed.2d 214], said "In assessing the degree to which a search infringes upon individual privacy, the Court has given weight to such factors as . . . the uses to which the individual has put a location [citations], and our societal understanding that certain areas deserve the most scrupulous protection from government invasion [citations]." (*Oliver v. United States, supra*, 466 U.S. at p. 178 [80 L.Ed.2d at pp. 223-224] [warrantless search of marijuana fields permissible]; see also *Sec. & Law Enforcement Emp., Dist. C. 82 v. Carey* (2d Cir. 1984) 737 F.2d 187, 202 [expectations of privacy can vary, depending on circumstances and location].) Moreover, despite *Katz*, "[f]ederal courts . . . have consistently followed *Lanza* and upheld admission of monitored conversations in jails or police stations." (*Donaldson v. Superior Court* (1983) 35 Cal.3d 24, 29-30 [196 Cal.Rptr. 704, 672 P.2d 110], citing inter alia *United States v. Hearst* (9th Cir. 1977) 563 F.2d 1331, 1345; see also *People v. Von Villas* (1992) 11 Cal.App.4th 175, 213 [15 Cal.Rptr.2d 112] ["Federal and California cases have repeatedly relied on the *Lanza* dictum as authority."].)

*Bell v. Wolfish, supra*, 441 U.S. 520 [60 L.Ed.2d 447] held pretrial detainees were subject to unannounced searches of inmate living areas. Even assuming they retained an expectation of privacy, those rights were subject to restriction in order to maintain institutional security and preserve internal order and discipline. (*Id.* at p. 546 [60 L.Ed.2d at p. 473].) "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."[9] (441 U.S. at p. 547 [60 L.Ed.2d at p. 473].)

---

[9]*Bell v. Wolfish* also upheld visual body cavity searches of prisoners after contact with outside visitors, without probable cause, to prevent the smuggling of contraband. (441 U.S. at p. 559 [60 L.Ed.2d at p. 481].) Some circuits have held reasonable suspicion is required for intrusive strip searches of persons arrested for minor offenses, such as traffic offenses, in a

A few years later, *Hudson* v. *Palmer* (1984) 468 U.S. 517 [82 L.Ed.2d 393, 104 S.Ct. 3194] held prison inmates are not entitled to Fourth Amendment protection against unreasonable searches and seizures in their individual cells. While recognizing ". . . prisons are not beyond the reach of the Constitution" (*id.* at p. 523 [82 L.Ed.2d at p. 401]), the court said: "Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct. . . . [¶] Within this volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of not only the prison staffs and administrative personnel, but also visitors. They are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves. They must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize." (*Id.* at pp. 526-527 [82 L.Ed.2d at p. 403].)

The United States Supreme Court further said in *Hudson* v. *Palmer*: "Determining whether an expectation of privacy is 'legitimate' or 'reasonable' necessarily entails a balancing of interests. The two interests here are the interest of society in the security of its penal institutions and the interest of the prisoner in privacy within his cell. The latter interest, of course, is already limited by the exigencies of the circumstances: A prison 'shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.' [Citation.] We strike the balance in favor of institutional security, which we have noted is 'central to all other corrections goals' [citation]. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. . . . [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security." (*Hudson* v. *Palmer, supra*, 468 U.S. at pp. 527-528 [82 L.Ed.2d at pp. 403-404], fns. omitted.)

Various California cases have upheld the monitoring of conversations or statements in detention settings on the ground there was no justifiable expectation of privacy under the Fourth Amendment. (E.g., *People* v. *Von Villas, supra*, 11 Cal.App.4th at pp. 212-216 [conversation between pretrial

---

county jail, where the security threat is not as great. (E.g., *Giles* v. *Ackerman* (9th Cir. 1984) 746 F.2d 614, 617, 78 A.L.R.Fed. 191.)

Here, defendants did not initiate any strip search or body cavity search.

detainee and wife in county jail visiting area]; *Ahmad A.* v. *Superior Court* (1989) 215 Cal.App.3d 528, 535 [263 Cal.Rptr. 747] [recording of conversation between minor accused of murder and his mother in police interrogation room]; *People* v. *Elwood* (1988) 199 Cal.App.3d 1365 [245 Cal.Rptr. 585] [recording of arrestee talking to himself while alone in jail interview room].)

As indicated, this case is different because the persons claiming the constitutional deprivation are not inmates but deputy sheriffs employed at the jail. Nevertheless, we agree with those federal cases which recognize privacy expectations are diminished (though not eliminated) where persons elect to work in a jail or prison setting.

Thus, for example, *McDonell* v. *Hunter* (8th Cir. 1987) 809 F.2d 1302, said, "While correction officers retain certain expectations of privacy, it is clear that, based upon their place of employment, their subjective expectations of privacy are diminished while they are within the confines of the prison. [Citations.] We believe that society is prepared to accept this expectation of privacy as reasonable although diminished 'in light of the difficult burdens of maintaining safety, order and security that our society imposes on those who staff our prisons.' " (*Id.* at p. 1306.) Balancing the security interests against the employees' interests, *McDonnell* held a reasonable suspicion standard applied to strip searches of correction officers while working in correctional facilities. (*Id.* at pp. 1306-1307.) Urinalysis testing of employees who came into regular contact with prisoners could be conducted uniformly or by systematic random selection; testing of other prison employees could be done on the basis of reasonable suspicion. (*Id.* at pp. 1307-1308.) In furtherance of the prison security interest in keeping contraband out of the prison, prison officials could search employee vehicles parked *within* the institution's confines where they were accessible to inmates; such searches could be conducted without cause but must be done uniformly or by systematic random selection. (*Id.* at p. 1309.) Employee vehicles parked *outside* the institution's confines could be searched randomly if inmates had unsupervised access to those vehicles; otherwise, reasonable suspicion was required. (*Ibid.*)

Similarly, *Sec. & Law Enforcement Emp., Dist. C. 82* v. *Carey, supra,* 737 F.2d at pages 201-205, concluded correction officers have "expectations—albeit diminished—that they will be free from excessive and unwarranted intrusions based upon unrestrained, standardless exercises of authority by prison administrators. [¶] The second prong of the reasonableness test—the promotion of legitimate governmental interests—requires us to examine the

justifications asserted for the searches." (*Id.* at p. 202.) The Second Circuit there held correction officers were subject to strip search on a reasonable suspicion standard. (*Id.* at p. 204.)

The foregoing cases reflect that deputy sheriffs working in a jail, while not foregoing all privacy rights, have diminished privacy expectations by the nature of their employment.

Balancing the institutional security interests against plaintiffs' interests in this case, we do not believe plaintiffs had a reasonable expectation of privacy against being videotaped in the release office of the jail. Even though Prizmich was assigned as release officer one day a week and believed he could exclude others, the release office was not exclusively assigned to him and had no lock on the door. The release office was accessible to any number of people, including other jail employees, inmates on cleaning detail and outside personnel. At oral argument, plaintiffs admitted the release office (which is a room about seven feet by twelve feet) was a place where inmate property—including cash—was kept until immediately before the inmate's release. The object of the investigation was to find out why inmates' cash was disappearing. The release office was a logical place upon which to focus.

That plaintiffs may have believed they could exclude others and may have closed the door when they wanted privacy does not mean they had an objectively reasonable expectation of privacy. That others may have refrained from entering when the door was closed does not mean plaintiffs had a constitutional right to privacy while in the office with the door closed. The test is not whether an individual "chooses to conceal assertedly 'private' activity," but rather whether the intrusion infringes on personal and societal values protected by the Fourth Amendment. (*Oliver* v. *United States, supra,* 466 U.S. at pp. 182-183 [80 L.Ed.2d at p. 227].)

We recognize the deputy sheriffs may have a reasonable expectation of privacy against being videotaped in certain portions of the jail, such as the deputies' bathroom or locker room (areas set aside for private activity) or perhaps under some circumstances an office assigned to the exclusive use of one person. However, the release office is not such a place. It serves as an integral component of the system for recording and releasing inmates' property, and it is a room to which inmates have access. The nature of the room is such that it is not private. It is a room in which jail security concerns are appropriate and in which plaintiffs have a diminished expectation of privacy. Consequently, the rules allowing jail surveillance should apply.

That the surveillance took place in the release office, which is not generally used by inmates, does not insulate that location from the institutional security needs of the jail. Federal cases recognize that the threat to institutional security may come from employees as well as inmates. (E.g., *Sec. & Law Enforcement Emp., Dist. C. 82* v. *Carey, supra,* 737 F.2d 187.)

Plaintiffs cite cases commenting that video surveillance "raises the spectre of the Orwellian state." (*U.S.* v. *Cuevas-Sanchez* (5th Cir. 1987) 821 F.2d 248, 251 [warrant authorizing video surveillance of defendant's backyard did not violate Fourth Amendment]; *United States* v. *Torres, supra,* 751 F.2d 875 [holding district court had authority to issue warrant authorizing vision surveillance of terrorist group's "safe houses"].) Plaintiffs also cite cases where warrantless videotaping was held to violate reasonable expectations of privacy; however, none of the cited cases involved videotaping in a jail. Thus, plaintiffs cite *People* v. *Henderson, supra,* 220 Cal.App.3d 1632 [Fourth Amendment was violated by videotaping defendant's drug-manufacturing activities inside informant's condominium, in informant's absence, despite informant's consent to videotaping]; *U.S.* v. *Taketa* (9th Cir. 1991) 923 F.2d 665 [Fourth Amendment was violated by admission into evidence of videotape of state and federal drug enforcement agents, taped in airport office exclusively assigned to state agent, searching for evidence that agents were engaged in criminal conduct];[10] *State* v. *Thomas* (Ind.Ct.App. 1994) 642 N.E.2d 240 [Fourth Amendment was violated by videotaping inside of state-owned and licensed campstore concession located at state park on state property]; *State* v. *Bonnell* (1993) 75 Hawaii 124 [856 P.2d 1265] [Fourth Amendment was violated by warrantless videotaping of "break room" in post office].) One of the cases cited by plaintiffs recognized the jail setting makes a difference in the analysis. Thus, *People* v. *Henderson, supra,* 220 Cal.App.3d at page 1644, in discussing the law, said: "The rule in *Katz* [decrying the use of equipment to hear what the unaided ear cannot hear] has been held to be inapplicable to situations . . . where a jailhouse conversation or telephone conversation between detainees and visitors is secretly monitored for institutional security or when confidential relations are not involved (*Lanza* v. *New York* (1962) 370 U.S. 139 [8 L.Ed.2d 384 . . .]; *De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865 . . . ."

Although the cases cited by plaintiffs indicate that videotaping is highly intrusive, those cases do not help plaintiffs because the intrusiveness of

---

[10]Plaintiffs rely heavily on *U.S.* v. *Taketa, supra,* 923 F.2d 665, because it held the videotaping violated the rights not only of the agent to whom the office had been exclusively assigned but also the other agent while he was a visitor in the office. We have indicated that the diminished expectation of privacy in a jail may not apply to some areas in a jail. Nevertheless, *Taketa* still does not help plaintiffs, because in that case the office was exclusively assigned to someone. Here, the release office was not exclusively assigned to any one person.

videotaping depends on the circumstances, and the nonprivate office in a jail setting makes this case unique.

Thus, *U.S.* v. *Taketa, supra,* 923 F.2d 665, said: "Video surveillance does not in itself violate a reasonable expectation of privacy. Videotaping of suspects in public places, such as banks, does not violate the fourth amendment; the police may record what they normally may view with the naked eye. [Citation.]" (*Id.* at p. 677.) *Taketa* went on to say: "Persons may create temporary zones of privacy within which they may not reasonably be videotaped, however, even when that zone is a place they do not own or normally control, and in which they might not be able reasonably to challenge a search at some other time or by some other means. [Citation.]" (*Ibid.*) However, here the jail setting—including the release office accessible to a variety of people within the jail—is unique. The test is not whether an individual "chooses to conceal assertedly 'private' activity," but rather whether the intrusion infringes on personal and societal values protected by the Fourth Amendment. (*Oliver* v. *United States, supra,* 466 U.S. at pp. 182-183 [80 L.Ed.2d at p. 227].) Moreover, *Taketa,* by recognizing that video surveillance does not necessarily violate expectations of privacy, undermines plaintiffs' suggestion that all video surveillance requires a warrant.

Under the circumstances of this case, the videotaping was not excessively intrusive.

Plaintiffs cite *Los Angeles Police Protective League* v. *Gates* (9th Cir. 1990) 907 F.2d 879, where a police officer was discharged when he refused to submit to an administrative search of the garage at his home, pursuant to a warrant obtained on reasonable suspicion that the officer was involved in a burglary ring. The Ninth Circuit held the officer could not be disciplined because the search, based on mere reasonable suspicion, would have violated the Fourth Amendment—*because it was a search at the officer's home, not in the work environment.* (*Id.* at pp. 885, 895.) Thus, the case does not assist plaintiffs in the case before us, because here the videotaping occurred in the jail. Moreover, the Ninth Circuit recognized: "[W]hile officers 'are not relegated to a watered-down version of constitutional rights,' [citation], the fact that they are policemen may affect the meaning of 'reasonableness' when their rights are being considered." (*Id.* at p. 885.)

We conclude there was no Fourth Amendment violation.[11]

Plaintiffs assert the surveillance constituted an unlawful search under the California Constitution, article I, section 13. However, section 1983 protects federal rights, not state rights. (See *Gomez* v. *Toledo* (1980) 446 U.S. 635, 640 [64 L.Ed.2d 572, 577, 100 S.Ct. 1920] [deprivation of a federal right is required element of section 1983 action].) Assuming for the sake of argument that plaintiff's pleading adequately set forth a state cause of action under article I, section 13 of California Constitution, plaintiffs still fail to show any basis for reversal of the judgment.

Plaintiffs merely point out the California Constitution may provide broader protection against search and seizure than the Fourth Amendment. (*People* v. *Chavers* (1983) 33 Cal.3d 462, 467 [189 Cal.Rptr. 169, 658 P.2d 96] ["on occasion" California Supreme Court has afforded broader protection, but search of shaving kit in glove compartment of car stopped upon probable cause to suspect contraband was lawful under both state and federal Constitutions]; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 545 [119 Cal.Rptr. 315, 531 P.2d 1099] [although search would be authorized under federal Constitution, under California Constitution officers' legitimate search of arrestee's knapsack for weapons did not justify looking into opaque bottle and envelopes containing drugs]; *Betchart* v. *Department of Fish & Game* (1984) 158 Cal.App.3d 1104, 1107 [205 Cal.Rptr. 135] [both state and federal constitutional law authorized game wardens to enter agricultural range land].) "Under California law, a claim of illegal warrantless search is measured by a balancing test: 'whether the person has exhibited a reasonable expectation of privacy, and, if so, whether that expectation has been violated by unreasonable governmental intrusion . . . .' " (*Ibid.*)

However, plaintiffs cite no California law supporting a different result in the context of the search at issue in this case. They merely assume that because California courts sometimes provide broader protection, we must do so in this case, with the result that the search must be held unlawful. That is not the way it works. The general policy is that " 'cogent reasons must exist

[11]Although we do not require reasonable suspicion for the videotaping in this case, the surveillance would pass muster even under that higher standard. Thus, a reasonable suspicion exists when there are specific, articulable facts, and inferences from those facts, which reasonably warrant a suspicion that evidence will be uncovered. (*Kirkpatrick* v. *City of Los Angeles* (9th Cir. 1986) 803 F.2d 485, 489.) Plaintiffs do not dispute that thefts were occurring at the time the camera was placed in the release office, and a criminal investigation revealed the thefts were occurring in that office. Reasonable suspicion supported the surveillance in this case.

before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution.' " (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 353 [276 Cal.Rptr. 326, 801 P.2d 1077].) Plaintiffs must show that California law supports their position. They fail to do so.

We conclude plaintiffs fail to show any basis for reversal of the judgment on constitutional grounds.

III.  *Statutory Privacy Claim*

Plaintiffs contend the trial court erred in granting summary judgment against them on their claim for violation of the California Invasion of Privacy Act (Pen. Code, § 630 et seq.).[12] We disagree.

Assuming for the sake of argument that confidential communications were recorded within the meaning of the statutes (a point disputed by the parties), Penal Code section 633[13] provides that law enforcement officials, acting in that capacity, may record confidential communications to the extent lawfully permitted prior to the 1967 enactment of the privacy act. (Stats. 1967, ch. 1509, § 1, p. 3586.) We have seen the surveillance in this case was lawful.

We therefore need not address defendants' further argument that the privacy act requires an intent to record a confidential communication, and here the sole intent was to record an act (the taking of money), not a confidential communication.

---

[12]Penal Code section 630 declares the Legislature's intent to restrain "eavesdropping upon private communications." Penal Code section 631 prohibits certain acts intended to learn the contents or meaning of "any message, report, or communication" while the same is in transit or passing over any wire, line or cable. Penal Code section 632 prohibits electronic eavesdropping or recording of "confidential communications." Penal Code section 632, subdivision (c), defines confidential communication as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

[13]Penal Code section 633 provides in part: "Nothing in Section 631, 632, 632.5, 632.6, or 632.7 prohibits . . . any sheriff, undersheriff, or deputy sheriff regularly employed and paid in that capacity by a county, or any person acting pursuant to the direction of one of these law enforcement officers acting within the scope of his or her authority, from overhearing or recording any communication that they could lawfully overhear or record prior to the effective date of this chapter. . . ."

Plaintiffs fail to show any grounds for reversal based on the California Invasion of Privacy Act.

## IV. *Tortious Privacy Claim*

■ Plaintiffs contend defendants are liable for the tort of invasion of privacy because plaintiffs had a reasonable expectation that they would not be videotaped while in the release office. We disagree.

Plaintiffs cite the Restatement Second of Torts, section 652B, page 378 which states: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

In discerning the existence of a cause of action for intrusion, the court makes the preliminary determination whether there is "offensive" conduct. (*Miller* v. *National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1483 [232 Cal.Rptr. 668, 69 A.L.R.4th 1027].) In determining the existence of offensiveness, the courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." (*Id.* at pp. 1483-1484 [television camera crew's entering private residence without consent in order to film paramedics' attempts to save life of heart seizure victim met threshold of offensive conduct, entitling case to go to jury].)

Here, we conclude there was no "offensive" conduct supporting tort liability, for the same reasons there is no constitutional deprivation. Thus, even accepting plaintiffs' characterization of videotaping as highly intrusive, the intrusiveness was abated by the absence of audio capabilities. Moreover, defendants' objectives were lawful, and the "intrusion" took place in a nonprivate office in the booking area of a county jail, wherein plaintiffs had a diminished expectation of privacy.

We conclude plaintiffs fail to show any basis for reversal of the judgment.

In light of our disposition, we need not address defendants' contentions that (1) summary judgment in favor of the institutional defendants was

proper because any alleged deprivation was not caused by a "policy" as required for civil rights liability, and (2) summary judgment in favor of the individual defendants was proper because they did not cause any of the alleged deprivations and are protected by good faith qualified immunity.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

Blease, Acting P. J., and Raye, J., concurred.

Appellants' petition for review by the Supreme Court was denied March 26, 1997.